CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant, vs. THE CITY OF MILWAUKEE, Respondent.

*December 15, 1894 — March 5, 1895.*

*Railroads: Municipal corporations: Special assessments for street improvement.*

1. In subd. 14, sec. 1038, R. S., exempting railroad property from taxation, the clause "except that the same shall be subject to special assessment for local improvements in cities and villages" was intended merely to confine the exemption to the subject of general taxation, and has no independent affirmative force to make such property liable to assessment.

2. The tracks and necessary right of way of a railway company are not subject to assessment and sale for benefits by local improvements, in the absence of an express statutory provision to that effect.

3. The provisions of the charter of Milwaukee that the cost of street improvements shall be chargeable to and payable by the lots fronting or abutting on the street, to the extent of the benefits to such lots, and that the collection of the assessment therefor may be enforced by sale of the lots assessed, do not apply to or warrant an assessment against the track and right of way or other property essential to the exercise of the franchise of a railway company or the operation of its road.

Chicago, Milwaukee & St. Paul R. Co. vs. City of Milwaukee.

4. No special benefits such as will sustain an assessment accrue to the tracks and necessary right of way of a railroad from the improvement of the adjoining street.

5. A probability that land owned by a railway company will very soon be required for railway purposes does not exempt it from an assessment for street improvements.

APPEAL from a judgment of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. *Reversed.*

This was an appeal to the circuit court from an assessment of benefits made September 1, 1891, upon a strip of land owned by the appellant in fee and used in part for its tracks and as a right of way for railroad purposes, abutting upon the northerly side of Commerce street, and extending from the northeast corner of lot 14, in subdivision of lots 2 and 3, section 21, in Milwaukee, to the northwest corner of block 5, in the Sixth ward of said city, for grading and paving the roadway of said street with cedar-block pavement, the grading, curbing with stone, and planking of the sidewalks, and the paving of the gutters on said street opposite said land, being a total frontage of 2,275 feet. The amount of the assessment for benefits was $5,687.51 on a strip of land between said Commerce street and a line drawn parallel with and fifty feet northerly of the center of the main track of appellant's railway on lots in said strip numbered 83, 84, 85, 86, 87, and 88. The tracks beginning at the lower end of appellant's premises opposite lot 14 were twenty-one feet above the grade of Commerce street, and ascended on a regular grade to the other end of the premises, and were on an average elevation of twenty-five and nine tenths feet above the level of Commerce street. The width of the part of the strip between the center of appellant's main track and Commerce street varied, and for the purposes of the trial of the appeal the court divided the strip into two parts, namely: The easterly portion, having a frontage of 810 feet on Commerce street, and along which the land between

the tracks and Commerce street was considerably more than fifty feet wide for right of way, and the excess was not used for railroad purposes; and the westerly portion, where the land assessed lying between the street and the main railway track is practically no more than fifty feet wide, and is 1,665 feet long.

It appeared on the trial that the strip of land within the limits described had been used for railway purposes since 1854; that on the westerly portion of the strip the slope of the embankment necessary for its support came down practically to the curb line on Commerce street, and this was not disputed; and there were some five buildings on the easterly portion owned by employees of appellant, in which they lived, but it was probable that in the near future the entire strip would be required for railway purposes. Evidence was given by several witnesses on the part of the appellant tending to show that the slope of the embankment could not be used for unloading freight of any kind, and that the improvement of the street was no benefit to the appellant's tract or strip of land, but some of them estimated the benefits to the wider portion or easterly part of the strip at from $5 to $10 per front foot. On the part of the respondent one witness only was called, and he gave testimony tending to show that the benefit to the appellant's property was $5 per front foot of the entire length of the strip, 2,275 feet; that the ground could be leveled up along the westerly portion of said strip by building piers, and be used for warehouses and for platforms for loading materials down on wagons on the street; that lumber, stone, hay, etc., could be so loaded; and that the strip was accessible only from Commerce street. The distance down would be about thirty feet.

The appellant asked the court to instruct the jury: "(1) You cannot assess benefits against lands used by the appellant at the time of the assessment solely and necessarily

for right of way purposes. (2) Appellant's land, lots 84, 85, 86, 87, and 88, was at the time of the assessment not used for any purposes other than right of way purposes, and there is a conclusive presumption that a strip fifty feet in width on each side of the center line of said main track across said lots was and is necessary for right of way purposes, and such strip was not properly assessable for benefits at the time of the assessment. (3) So much of appellant's lands in said lots lying south of said tracks as was necessary to sustain the embankment was at the time of the assessment used solely and necessarily for right of way purposes. (4) If you find that land not in use by appellant was at the time of the assessment designed for use for right of way and railroad yard purposes, and was held for such purposes, you cannot assess benefits against it." These several instructions were refused.

The court charged the jury that the land, so far as it lay beyond the tracks of the railroad and beyond the necessary supports for those tracks, was clearly liable to assessment if it was in fact benefited by the street made in front of it; that it was a question for the jury to determine upon the evidence whether the land in the western portion of the strip, elevated about thirty feet above the street, was susceptible of being benefited by the improvement of the street, and whether it was susceptible of being benefited at all by the improvement of the street running alongside of it, and, if so, to what extent it could be so benefited; that the rule for assessing benefits was not affected at all by the cost of the work, nor by the actual amount of benefits that have been assessed; that the question was whether there was an actual benefit.

The jury found a special verdict to the effect that the easterly portion of the strip across the appellant's land was benefited by the improvement of Commerce street in the sum of $8,100, and that the westerly portion was benefited

thereby in the sum of $2,930. A motion was made to set aside the second finding of the jury, because contrary to law and to the evidence, and to enter judgment setting aside the assessment as to that portion of the strip, and to enter judgment assessing benefits in the sum of $2,025 against the lands in the eastern portion of the strip, that being the sum apparently charged against it by the assessment, or that a new trial of the action be granted. The court denied the motion, and rendered judgment affirming the assessment made by the board of public works, from which the appellant appealed to this court.

*C. H. Van Alstine,* of counsel, for the appellant, argued, among other things, that our constitution permits the legislature to make or authorize such assessments only as are based solely upon special benefits to the property assessed. Const. art. X, sec. 1; Id. art. XI, sec. 3; *Weeks v. Milwaukee,* 10 Wis. 242, 257, 259–261; *Hale v. Kenosha,* 29 id. 599, 605, 606; *Donnelly v. Decker,* 58 id. 465; 2 Dillon, Mun. Corp. (4th ed.), § 761. A railroad company does not receive any benefit, general or special, from a street running parallel with and adjoining its property used solely for right of way purposes. *New York & N. H. R. Co. v. New Haven,* 42 Conn. 279; *Bridgeport v. N. Y. & N. H. R. Co.* 36 id. 256, 267, 268; *Junction R. Co. v. Philadelphia,* 88 Pa. St. 424; *Philadelphia v. P., W. & B. R. Co.* 33 id. 41; *New York & H. R. Co. v. Morrisania,* 7 Hun, 652.

For the respondent there was a brief by *C. H. Hamilton,* city attorney, and *Howard Van Wyck* and *Charles E. Estabrook,* of counsel, and the cause was argued orally by *Mr. Hamilton.* To the point that lands belonging to a railroad company are liable to assessment for local improvements, they cited R. S. sec. 1038, subd. 14; *Kuehner v. Freeport,* 143 Ill. 92, 17 L. R. A. 774; *Ill. Cent. R. Co. v. Decatur,* 126 Ill. 92, 1 L. R. A. 613; *Ludlow v. Cincinnati S. R. Co.* 78 Ky. 357; *Burlington & M. R. Co. v. Mt. Pleasant,* 12

Iowa, 112; *Northern Ind. R. Co. v. Connelly,* 10 Ohio St. 159, 164; *New Haven v. Fair Haven & W. R. Co.* 38 Conn. 422; *Mt. Pleasant v. B. & O. R. Co.* 138 Pa. St. 365.

PINNEY, J.  1. It is contended that the assessment in question is authorized by subd. 14, sec. 1038, R. S.  Neither this section nor the chapter in which it is found treats of or has any relation to assessments for special improvements, but they relate to general taxation only.  This section declares what property shall be exempt from such taxation, and the subdivision relied on is that "the track, right' of way, depot grounds and buildings, machine shops, rolling stock, and all other property necessarily used in operating any railroad in this state belonging to any railroad company, including pontoon or pile and pontoon railroads, shall henceforth remain exempt from taxation for any purpose, except that the same shall be subject to special assessment for local improvements in cities and villages."  It had been held prior to this statute that such assessments were special taxes, imposed upon the basis of special benefits, and they had been distinguished from general taxes by the name of "assessments."  *Weeks v. Milwaukee,* 10 Wis. 256, 260; *Hale v. Kenosha,* 29 Wis. 605.  And the object of the exception, which is in the nature of a proviso, was not to declare a rule upon an independent subject, but to confine the exemption to the subject of general taxation, and to exclude any inference of intention that the section was to be operative as to special taxes or assessments (Endlich, Interp. Stats. §§ 184, 186); and the exception could have no operation or force separate and apart from the provision it was designed to limit, and left the liability of such property to assessment as it stood before the statute.  This is evident from the grouping of the kinds of property named in the section.  The "track, right of way, and depot grounds" are classed with "rolling stock," with "all other property necessarily used in operating any

railroad," and "pontoon or pile and pontoon railroads,"— kinds of property which it would be impracticable to subject to assessment for local improvements.  *Oshkosh City R. Co. v. Winnebago Co., ante,* p. 435.

2. Whether the track and right of way of a railroad company is subject to assessment for local improvements on the ground of special benefits, under the language of statutes couched in general terms providing for such assessments, is a question upon which the courts have not been agreed. The system and policy of each state enter largely into the question, and give to it a local character.

By the charter of Milwaukee, the improvement of Commerce street was made "chargeable to and payable by the lots fronting or abutting upon such street . . . to the amount" which such improvement shall be adjudged by the board of public works to benefit such lots; and an assessment of the amount is provided for, which when confirmed by the council, its collection may be enforced in case of nonpayment by a sale and conveyance of the lots so assessed. Laws of 1874, ch. 184, subch. 7, secs. 2, 7.

So much of the lots in question as were occupied by the tracks of the railroad and supporting banks, and used for right of way purposes, had been devoted and dedicated to uses in which the public had an important interest of a probable perpetual duration; and to enforce an assessment against such right of way and track, extending about half a mile in distance, by a sale and conveyance, would necessarily dismember and break up the entirety and utility of the road as a line of travel and commercial intercourse, and interfere with and impair the paramount interest which the public have in it for these purposes. The property of the corporation in its road and appurtenances essential to its operation and use, annexed to the franchise of the company to maintain and operate its road, is an entirety, and is thus charged in the hands of the company with an important

trust in favor of the public, though the property in all other respects is essentially private and operated for private gain. Public policy would seem to forbid a severance and segregation of its several special or particular parts, essential to the exercise of the franchises and the use and operation of the road, by forced sale upon legal process or for an assessment. If the general language found in the charters of cities and villages throughout the state on the subject, in substance the same as the provisions of the charter in question, is to be construed as applicable to and warranting an assessment against the track and right of way or other property essential to the exercise of the franchise of the company and the operation of its road, then every railway in the state is liable to be thus severed and its continuity destroyed by the action of local authorities in any city or village through which it passes,— a result which we are persuaded was not contemplated in the enactment of the charter of Milwaukee or other charters for local municipal government. While the company may be compelled by *mandamus* to operate its road between its termini, and forfeiture of its franchises may be adjudged for its failure (*People v. A. & V. R. Co.* 24 N. Y. 261; *People v. R., W. & O. R. Co.* 103 N. Y. 108; *Union Pac. R. Co. v. Hall,* 91 U. S. 354; *State v. West Wis. R. Co.* 34 Wis. 215, 217), the company would be rendered powerless to execute its public trust and discharge its public duties. The question is to be judged by the consequences which would attend a complete exercise of the power of assessment, when carried to a sale and conveyance of the property attempted to be charged.

The authorities holding that neither the corporate rights and franchise of a *quasi* public corporation can be sold on execution, nor can its lands or works essential to the enjoyment of the franchise be separated from it and sold under execution, so as to destroy or impair the value of the franchise, were cited and considered in *Yellow River Imp. Co.*

*v. Wood Co.* 81 Wis. 559, 562; and the principle was asserted in *Gue v. T. W. Canal Co.* 24 How. 263, upon the ground stated in that case that the property seized was of little or no value apart from the franchise, but was essential to the operation of the canal, and in connection with it was of great value, and would be rendered valueless by such sale, and that the franchise by which the use of the property was made valuable would not pass by the sale. The track and right of way in this case are not adapted to any other profitable use. A sale of such property on execution, which included the very bed of the road as well as the ground needed for depot and other buildings, was held invalid as to such portions; that no title passed to the purchaser; and that the company must be protected in the possession of all that was really essential to the enjoyment of its franchise. *Plymouth R. Co. v. Colwell,* 39 Pa. St. 337. In the case of *Yellow River Imp. Co. v. Wood Co., supra,* it was held that the principles mentioned "apply with equal force to tax proceedings," upon the ground "that the rights, franchises, and plant essential to the continued business and purposes of a *quasi* public corporation are not to be severed, broken up, or destroyed *without express legislative authority,* but, on the contrary, are to be preserved in their entirety, and for that purpose are deemed segregated from any other property owned by the corporation." And it was accordingly held that the value of a dam, an essential portion of the corporate rights, franchises, and plant of the company, was improperly included in the assessment of the tract of land owned by the company, and upon which it was located; and the tax extended on the assessment was for that reason held invalid and canceled. To the same effect is *Fond du Lac Water Co. v. Fond du Lac,* 82 Wis. 322, where it was held that an assessment for taxation of only the lots upon which the pumping works and the station of the company were situated was invalid; that the assessment should have in-

cluded the entire property of the company, its mains, pipes, and hydrants throughout the city, and franchises and privileges, as an entirety, so as to avoid any severance upon sale for nonpayment of taxes.

These cases establish the principle that the general provisions of the statute concerning the levying and collection of taxes are to be construed and held subordinate to the rule against severance and segregation of the property essential to the continued exercise of such corporate franchises, and that such a result cannot be effected, under the power of taxation, without express legislative authority, and that general language in such statutes will not be held to authorize such a result. Manifestly, the same rule of construction should be applied to the general language of the charter of Milwaukee, and, in the absence of an express statute authorizing an assessment of the tracks and necessary right of way of a railway company, the assessment and sale thereof for benefits by local improvements cannot be sustained. *People ex rel. Davidson v. Gilon*, 126 N. Y. 147; *New York & H. R. Co. v. Morrisania*, 7 Hun, 652.

It is universally conceded that all such assessments have their foundation, rest upon, and cannot lawfully exceed, the special benefits of the improvement to the property against which the cost of its construction, to that extent, is charged. 2 Dillon, Mun. Corp. § 761; *Weeks v. Milwaukee*, 10 Wis. 259, 261; *Hale v. Kenosha*, 29 Wis. 605, 606; *Donnelly v. Decker*, 58 Wis. 465; *Hammett v. Philadelphia*, 65 Pa. St. 152 *et seq.* Such an assessment cannot be maintained for general benefits to the community or locality resulting from the work. For the payment of such expenditures, resort must be had to general taxation, the rule of which is required to be uniform. "Whenever an assessment upon an individual is not grounded upon and measured by the extent of his particular benefit, it is *pro tanto* a taking of his private property for public use without any provision for compen-

sation." Per SHARSWOOD, J., in *Hammett v. Philadelphia*, *supra*. We think it clear, as a matter of law, that property such as the railroad tracks and necessary right of way cannot be said to be benefited by the improvement in question; and as said in *Philadelphia v. P., W. & B. R. Co.* 33 Pa. St. 43: "It would be strange legislation that would authorize the soil of one public road to be taxed in order to raise funds to make or improve a neighboring one." In *Junction R. Co. v. Philadelphia*, 88 Pa. St. 424, it was held that the city could not maintain a municipal claim for paving against or opposite the roadbed of a railroad company, and that it was immaterial whether the company had simply a right of way or owned the bed in fee, and it was said that "the right of way is exclusive at all times and for all purposes, and, moreover, it is perpetual;" and that "a railroad from its very nature cannot derive any benefit from the paving, while all the rest of the neighborhood may, and it is not to be presumed that the compulsion was intended to be applied to such companies." To the same purport is *Allegheny City v. West. Pa. R. Co.* 138 Pa. St. 375, in which it was said that, "in a case where we can declare as a matter of law that no such benefit can arise, the legislature is powerless to impose such a burden. It would not be a tax in any proper sense of the term; it would be a forced loan, and would practically amount to confiscation." In *Bridgeport v. N. Y. & N. H. R. Co.* 36 Conn. 255, it was held that contingent, remote, inappreciable, or uncertain benefits would not authorize an assessment, where an assessment might be made against the franchise of the company, and the track and right of way were not liable to such assessment, and that the benefit in such case must be direct, immediate, and certain. *New York & N. H. R. Co. v. New Haven*, 42 Conn. 279. "The fact that the pavement makes access to the station easier shows a benefit to the public at large, but not a special benefit to the company."

It was contended that the assessment of the board of public works is conclusive that the entire strip in question, including the track and necessary right of way, was benefited by grading and paving of Commerce street; and that the only question open to the appellant was as to the amount of benefits.   Sec. 11, subch. 7, ch. 184, Laws of 1874, and the cases of *Teegarden v. Racine,* 56 Wis. 545, and *Dickson v. Racine,* 61 Wis. 545, were relied on.   The question of benefits to the track and right of way being a legal one, manifestly the assessment cannot be conclusive, but the position is no doubt correct as to the rest of the strip.   This precise question was presented in *Allegheny City v. West. Pa. R. Co.* 138 Pa. St. 382, where it was held that "while the owner of an ordinary lot of ground, whether an individual or corporation, cannot be heard to defend against a municipal assessment for paving, for the reason that the law presumes such property is benefited, yet, in the case of the roadbed of a railroad, the presumption of law is the other way.  It is the same at all times and under all circumstances; hence the law declares the absence of benefits."   But, if the presumption is a disputable one, the evidence on the part of the city did not tend to show any direct, immediate, and certain benefit to the track and right of way, and the only benefit indicated by the testimony was clearly remote and contingent, depending upon the expenditure of considerable sums, and there was nothing to show that it would be judicious or desirable for the company to enter upon the work. The benefit shown, if any, was to the public in facilitating consignees in getting heavy freights from the tracks, and not to the company.

Contrary conclusions have been reached in *Ill. Cent. R. Co. v. Decatur,* 126 Ill. 92; *Muscatine v. C., R. I. & P. R. Co.* 79 Iowa, 645; *Northern Ind. R. Co. v. Connelly,* 10 Ohio St. 159; *Ludlow v. Cincinnati S. R. Co.* 78 Ky. 358; *Appeal of North Beach & M. R. Co.* 32 Cal. 500.   But some of these

cases proceed upon quite general reasoning and are not in harmony with our previous decisions.

The result is that the assessment as to the railroad track and necessary right of way was without authority of law, and it should be set aside as to all the premises except that portion of the easterly part of the strip between the street and tracks and necessary right of way. The fact that it is probable that in the near future this portion of the strip will be required for railway purposes will not serve to protect it against the assessment. *New York, N. H. & H. R. Co. v. New Britain*, 49 Conn. 40. As to this part of the strip there should be a new trial.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.