LAND, J.
Plaintiff sued defendant company, owner and operator of a street railroad in the city of Baton Rouge, to recover an assessment of $5,826.33 for street paving done under certain ordinances, the demand being based upon a certificate of performance issued to plaintiff company by the municipal authorities of said city. The city of Baton Rouge was also sued for the same sum, and judgment prayed for against-said city' in the alternative in the contingency that plaintiff should fail to recover against the street railroad company.
The defenses set up will be hereafter stated and considered in their order, so far as may be found necessary.
Judgihent was rendered against defendant company for the full amount sued for, with interest and costs. The defendant company appealed. Plaintiff also appealed to preserve its contingent recourse against the city.
In 1890 the city of Baton Rouge granted to J. N. Ogden and others a franchise on certain conditions to construct and operate for 50 years a street railway over certain designated. streets. One of the conditions was that the grantees should keep the space between the rails and also the space df 12-inches on the outside of every rail in good repair to the level of the top of the rails, so. that persons or vehicles using the streets should in no wise be hindered or obstructed by the rails. The city of Baton Rouge reserved the right, at its expense, to take up- and remove the tracks and to replace the-same in proper condition, “when necessary to effect public improvements.”
The grantees constructed and operated a. street railway under this franchise, and all tlioir vested rights and privileges passed finally to the defendant company herein.
The city of Baton Rouge, by ordinance-adopted May 11, 1900, ratified and approved all of the transfers of said franchise down to and including that to the Home Electric Company, and confirmed the said company-in the ownership, possession, and enjoyment thereof. The same ordinance recognized and confirmed the right of the Home Electric-Company to sell the railroad and franchise owned and enjoyed by it to the defendant company. On the same date the sale and. transfer thus authorized was made.
In November, 1901, property owners petitioned the city council to order the paving of certain streets in accordance with sections. 35 and 36 of the charter of the city of Baton Rouge. See Act No. ICO, pp. 327, 340, 341, of 1898. Under section 35 of this charter the-cost of paving all streets except North Boulevard is borne two-thirds by the abutting owners and one-third by the city, and in case of said boulevard the proportions are reversed.
After legal advertisements, the contract: was awarded to plaintiff company under specifications which declared that payment should be made by the city and the abutters, in the proportions specified in section 35 of the charter. Thereupon an ordinance was adopted levying an assessment to defray the-expenses of the work. This ordinance purported to have been passed in accordance with section 35 of the charter and section 3. *537 of Act No. 10, p. 9, of 1890, and levied an | assessment on defendant railway pursuant to the last-named section. In the contract for the work it was stipulated that the contractor would accept in partial payment of the work such certificates as may be issued in accordance with law to evidence deferred payments due by abutting property holders and the Baton Rouge Electric & Gas Company. The work was prosecuted and completed under the contract without any objection or protest on the part of defendant street railway company, which, however, refused to pay the assessment levied against it.
One of the defenses set up by the defendant company is that the city of Baton Rouge had no lawful right or power to levy the special assessment in question. This contention is based, first, on the proposition that Act No. 1C9, p. 327, of 1898 (the charter of the city of Baton Rouge), contains no provision that street railways shall pay any part •of the cost of street pavement, but, on the contrary, imposes the whole of such cost on the city and the abutting property holders; and, second, on the further proposition that Act No. 10, p. 9, of 1896 (the general law imposing on street railways a certain proportion of the cost of paving streets), was repealed by necessary implication by the city charter of 1898.
The statement of facts already given shows that all the proceedings down to and including the letting of the contract were had under the provisions of section 35 of the city charter, which provides that all the cost of the pavement shall be borne by the city and the abutting property owners; and that, after the bid had been accepted, the city council levied an assessment on the street railway pursuant to section 3 of Act No. 10, p. 9, of 1896.
Section 35 et seq. of the city charter of Baton Rouge, under the heading of “Streets and Banquettes,” provide nowhere for a special assessment for cost of paving against street railways. Section 35 provides that, where abutting property owners petition for street paving, the cost “shall be borne” by the owners of property fronting on the pavement and the city in certain proportions. Section 40 provides that the council may, in its discretion, order the paving of any street, or any portion thereof, at the expense of the whole city, or may levy on the front proprietors of lots fronting on said street or streets a special assessment in proportion to frontage of two-thirds of the cost of the improvement. Hence the provisions of said sections necessarily exclude street railways by specially declaring that all the cost of paving streets shall be borne by the city or by the city and front proprietors.
When this charter was adopted in 1898, the street railway was in operation, and was subject to special assessments for street paving under section 3 of Act No. 10, p. 9, of 1896. The exclusion of street railways from special assessments must therefore have been intentional. The reason may well have been that under its franchise, granted in 1890, the obligation of the street railway did not extend beyond keeping the streets in repair.
Section 56 of the charter of 1898 provides that “all laws or part of laws contrary to or in conflict with this act be and the same are hereby repealed.”
Act No. 10, p. 9, of 1896, empowered cities and towns (the city of New Orleans excepted) having a population exceeding 10,000 to pave streets, and to levy special assessments to pay a part of the cost of such work.
Under section 1 of this act the power of the municipal authorities by a majority vote of the council or board to order the paving of any street is absolute.
Under section 2 of the same act it is provided that the owners of real estate abutting the street paved shall pay two-thirds of the entire cost of the work, and the corporation one-third out of its general resources, “provided that when a railway bed and *539 track occupies a portion of the street it shall pay in proportion to the space occupied by its roadbed compared to the entire width of the street and provided further that the intersections of all streets shall be paved at the expense of the municipality and railroad occupying a portion of the same in the proportion to the space the said roadbeds may occupy with relation to the whole intersection.” Section 3 of said act provides for 10 days’ notice by publication in a newspaper of the ordinary calling for bids, and for the letting of the contract to the lowest responsible bidder who can give satisfactory security, reserving to the council the right to reject any and all bids; and, further, that after the contract has been awarded the council shall provide by ordinance for an assessment for all real estate abutting on the street and all railroad tracks in such manner as to apportion two-thirds of the contract price on the basis of the respective frontage of the real estate so abutting and on the railroad track in the proportion as set forth in section 2.
Section 4 (page 10) of the same act provides that the sums so assessed shall be due and collected within 10 days after the completion of the work and its acceptance by the mayor and city engineer, and that in ease of delinquency the municipal authorities shall have the power to proceed by suit to collect the assessments, and shall have a first privilege on the property to secure the payment of the sum assessed with 8 per cent, interest per annum from the expiration of said 10 days until paid; that such privilege shall affect the third persons from the date of the registry of the assessment in the mortgage book of the parish; and that the councils in their discretion should have the right to permit the property owner to pay 20 per cent, of the amount due by him in cash and to authorize certificates for the balance, payable in 1, 2, 3, 4, and 5 years (or sooner, at the option of the property owner), with 8 per cent, interest, payable annually.
In City v. Prescott, 51 La. Ann. 1895, 26 South. 664, 46 L. R. A. 193, this court held that Act No. 10, p. 9, of 1896, was sui generis, in that the abutting proprietors were not consulted, but were taxed without their knowledge or consent, and that the taxes' so levied were not local assessments, but forced contributions, for street improvement.
Act No. 169 of 1898, incorporating the city of Baton Rouge, in the matter of street improvements contains provisions essentially different from those of Act No. 10, p. 9, of 1896. In the matter of street paving the initiative is left in a great degree to the property owners interested, and a majority controls. Sections 35 and 36. This is true also as to the opening or straightening of streets. Section 37. It is true that section 40 vests in the council the power to order the paving of streets without being petitioned to do so by the property owners, but this power is so hedged in by conditions that its exercise would be most difficult. Section 42 provides that notice of the intention of the council to order the paving of any street shall'be published in the official journal once a week for four weeks, and a two-thirds vote of the city council shall be necessary to pass any paving ordinance under section 40. Section 42 also gives a majority of the property owners in number and measurement, on the street to be paved, the right to designate the particular kind of pavement and material to be used. Section 42 further provides that when paving is ordered under section 40 the property holder’s proportion of the cost of paving shall be paid on terms not less favorable than one-fourth cash and the balance in one, two, and three years,, with 6 per cent, interest.
The differences between the provisions of Act No. 10, p. 9, of 1896, and the charter of 1898 are radical. The former provides that *541 railroads occupying streets shall pay a certain proportion of the cost of paving the same.
The charter of the city of Baton Rouge not only imposes no such burden on railroads, but excludes them from local assessment by providing that the entire cost of street paving shall be borne by the city and the abutting proprietors.
■As the provisions of the charter apply to all streets, there is no room for the construction that streets occupied by railroad tracks are excepted. North Boulevard is specially named in section 35 of the charter, and the defendant railroad is sued for a portion of the cost of paving the same.
The intentional exclusion of railroads is further shown by the circumstance that they are given no voice whatever in any of the proceedings relative to street paving. There are many other differences between the act of 1896 and the charter of 1898 as to the rights of abutters, modes of proceeding, and time and terms of payment. The act of 1896 provides that delinquents shall pay 8 per cent, interest. The charter of 1S98 provides in like case for the payment of 6 per cent. In the case at bar the defendant railway is condemned to pay 8 per cent, interest, while under the charter the rate of interest is limited to 6 per cent.
Act No. 10, p. 9, of 1896, while conferring a drastic power of taxation, placed the railroads and the abutting owners on the same plane of equality, giving neither a voice in the proceedings, and imposing the same penalty in case of delinquency.
As it is conceded that the charter of 1898 superseded the act of 1896 as to the abutting owners, it follows that, if the latter act is operative as to railroads in the city of Baton Rouge, the city charter discriminates against railroads and in favor of abutting owners not only as to interest and terms, but as to the right to be heard and consulted as to the streets to be paved, and the character and quality of pavement to be put down.
We cannot accept a construction which leads to such a conclusion.
It is manifest, we think, that the essential' provisions of Act No. 10, p. 9, of 1896, are contrary to and in conflict with the provisions of the charter of the city of Baton Rouge adopted in 1898, and therefore fell within the purview of its repealing clause.
The Revised Civil Code declares that the repeal of a law is implied “when the new law contains provisions contrary to, or irreconcilable with, those of the former law.”' Article 23.
The maxim, “Lex generalis non derogat speciali,” implies that the special law controls as to the particular matter made the subject of special legislation.
We therefore are of opinion that the city council had no warrant in law to impose the special assessment on the defendant railway.
Holding that the special assessment was wholly unauthorized, we do not think that the mere silence and inaction of defendant railway estopped it to urge the want of jurisdiction in the council to levy the tax. Elliott, Roads and Streets, § 689 et seq. When-the contract was let and accepted, it was on the basis that the city and the abutting owners would pay the entire cost of the work as provided by section 35 of the city charter. Subsequently, without notice to defendant company, the council levied a special assessment against it under .section 2' of Act No. 10, p. 9, of 1896. Hence it cannot be claimed that the contractor in making his bid relied on the liability of the railway to pay a part of the cost of construction.
As to benefits received by the railway company, its president testifies that the paving of the streets with asphalt has increased' the cost to the company of repairing the roadbed and the space on each side, which *544 the -company is bound to keep in repair under its franchise. While the city engineer testified that the cost of maintaining a railroad track on an asphalt street is less than -on a dirt street, his testimony shows that he was without practical experience in the matter. Of course, the new asphalt streets in Raton Rouge furnish no criterion as to future cost of repairs. Such assumed doubtful benefit is not sufficient in equity to estop the railway to plead thát the city council had no warrant in law to impose a forced contribution amounting to about one-sixth of the total cost of the pavement.
In all the contracts made between the plaintiff company and the city of Baton Rouge the specifications set forth that the ■city’s and the abutting proprietor’s respective portions of the cost of the work would be paid in accordance with section 35 of Act No. 169, p. 340, of 1898, and the latter’s portion on the following terms: One-quarter cash, and the balance in one, two, and three equal annual installments; all certificates for deferred payments to bear 6 per cent, interest from date of issue until paid.
After the contract had been let under said specifications, the council undertook by ordinance to impose on the street railway the burden of paying for a certain proportion of the pavement. The only reference in the contract to the street railway is contained in the following clause, to wit:
“It being understood and agreed that said contractor will accept in partial payment of said work such certificates as may be issued in accordance with law to evidence deferred payments due by abutting property owners and the Baton Rouge Electric & Gas Company.”
Neither the contract nor the ordinances authorized the transfer to the contractor of any certificates, except those issued for deferred payments, in cases where a portion of the assessment had been paid in cash. The present suit is on certificates issued by the city engineer stating that the railway company owed certain amounts for paving on certain streets. As stated above, there is no ordinance' or resolution that we can find in the record authorizing the transfer of such certificates to the contractor. If any such transfer had been made, it was not authorized by the council, as far as the record shows.
We therefore are of opinion that plaintiff’s demand against the city should be dismissed as in case of nonsuit, reserving whatever legal rights plaintiff may have in the premises.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and it is now ordered and decreed that plaintiff’s demand against the Baton Rouge Electric & Gas Company be rejected and plaintiff’s suit against said company be dismissed, and it is further ordered and decreed that plaintiff’s suit against the city of Baton Rouge be dismissed as in case of nonsuit, and it is finally ordered that plaintiff pay all costs of the suit