(51 South. 648.)

No. 17,558.

CITY OF SHREVEPORT v. KANSAS CITY, S. & G. RY. CO.

(Feb. 14, 1910.)

*(Syllabus by the Court.)*

1. STATUTES (§ 123*)—TITLE OF ACT—MUNICIPAL IMPROVEMENTS.

Act No. 10 of 1896 is not unconstitutional on the ground that its object was not expressed in its title and that it had two distinct and separate purposes. The provisions of the act are germane to the objects of the statute.
[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 130–132; Dec. Dig. § 123.*]

2. RAILROADS (§ 94*) — CONSTRUCTION OF ROADBEDS IN CITIES.

It is the duty of a railroad company constructing its roadbeds through a city to so construct its works that they shall not hinder, impede, or obstruct the drainage of the city, and that duty is a continuing one and should be met and performed by it as the necessity for the same arises.
[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 270; Dec. Dig. § 94.*]

3. RAILROADS (§ 94*)—RAILROADS IN STREETS —LIABILITY FOR PAVING.

The city authorities of the city of Shreveport, for the public good order causing a particular street to be paved, had the right to require, as necessary for the purpose of such paving, the railroad company whose tracks run through and along the streets to relay its tracks in the streets so as to conform to the paving of the streets, and, on the failure so to do, they had the right to have such work done themselves, and to be reimbursed the amount which they reasonably paid for that purpose.
[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 270; Dec. Dig. § 94.*]

Appeal from First Judicial District Court, Parish of Caddo; A. J. Murff, Judge.

Action by the City of Shreveport against the Kansas City, Shreveport & Gulf Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Alexander & Wilkinson, for appellant. Sewell C. Butler, City Atty. (Blanchard, Barrett & Smith, of counsel), for appellee.

## Statement of the Case.

NICHOLLS, J. The plaintiff alleged: That the defendant company was indebted to it in the sum of $7,434.72, with 8 per cent. per annum interest on $1,468.02 from 10th of July, 1906, and like rate of interest on $718.-47 from October 26, 1906, and a like rate of interest on $4,534.45 from 8th day of February, 1907, and 5 per cent. interest on $713.78 from July 11, 1906, for this, to wit: For street paving and concrete work done for and laying tracks where said railway crosses Southern avenue, $1,468.02; and for like work at the crossing of said railway on Louisiana avenue and Lake street, $718.47; and for like work at the crossing of said railway on Texas avenue, $4,534.45—an account of which was annexed.

That said work was duly and legally done under contract duly awarded, and ordinance was passed assessing all real estate abutting said streets and all railway tracks crossing the same, as provided by law, for the proportion of the costs of said work due by such abutting property owners and such railroad tracks. That said ordinance assessing said sum against said railway company was duly recorded in the mortgage book of said parish and state on the 2d day of July, 1908, and

bore a first privilege on said railway property over all other claims except taxes, and that petitioner was entitled to judgment for said sum with recognition of the first privilege over all other claims except taxes, on said railroad situated in said parish.

That the item of $713.78 was for this, to wit: That the said railway built and operates a spur track across the south end of Sestin street, in said city, crossing at the said street a natural drain, and failed to provide in said drain and in said street a sufficient culvert to carry off the water that naturally flows to the point, causing said street and the property adjacent thereto to be overflowed to the great inconvenience of the people and ill health of the neighborhood. That the culvert placed under said railway spur was not in the natural drain and was not in said street, but in a private lumber yard over which the city had no control to keep it open, and that said railway company failed to keep it open, and that lumber was piled upon it, and was allowed to remain there by said railway company.

That the culvert so placed by said railway company did not reach to said street and ended on the upper side in ground that was higher than the bottom of the natural drain, and it would require ditching across private property and through the lumber yard in order to get the water off of said street and into said culvert even if it could have been so drained, which was denied. That said culvert was wholly insufficient, improperly placed, and improperly kept, all of which rendered it necessary that a culvert should be placed under said railroad at its intersection with said Sestin street at the lowest point in said natural drain.

That the city made complaint to said railway company of the situation just described and notified said railway company that another and better culvert was required, and that, unless it was put in by the railway

125 LA.—19

company, it would be built by the city at the costs of said railway company. That the said company neglected and refused to put in said culvert, and it was finally put in by the city about July 11, 1906, and that the claim here sued for, being the cost of same, was paid by the city and was demanded of the said railway company and payment refused, and petitioner was entitled to judgment in the said sum and interest. That amicable demand had been made. In view of the premises, petitioner prayed that said railway company be cited, and, after due proceedings had, for judgment against it for said sum of $7,434.72, and interest, and that its privilege be recognized and enforced on the said railway company for the sum of $6,720.94, and for all other orders necessary, and for general relief.

Defendant, after excepting that plaintiff's petition disclosed no cause of action, answered, pleading first a general denial. Further answering, it admitted its ownership of the roadbed at the places mentioned in the plaintiff's petition, but it denied that it was in any manner liable for the charges contained in plaintiff's petition, and averred that, if the plaintiff did any such work as charged in the petition, same was done without any statutory authority in it to do so and was absolutely without any benefit or advantage to defendant.

That the plaintiff relied on Act No. 10 of 1896 as imposing on defendant the costs of the paving in question; whereas, in fact and in truth said act had no application to such work as was done by the plaintiff, and, even if it did apply to such work as was done in the matter, which was denied, the said act, in so far as same applied to railroads in or across streets, etc., is and was unconstitutional, null, and void, and in violation of article 31 of the Constitution of 1898, in that its object was not expressed in its title, and in that it had two distinct and separate pur-

poses in violation of said constitutional provision. But defendant showed that it had no opportunity of being heard or protesting against said so-called "improvement," which was made without its consent, or any notice or hearing of it, or any opportunity of its being heard, and the same was absolutely of no benefit to it or advantage to its property, and to permit the plaintiff to recover herein would be to deprive it of its property without compensation and to deny to it the equal protection of the law guaranteed to it by the Constitution of the United States and more particularly the fourteenth amendment thereof.

It specially denied that the plaintiff had any lien or privilege on the segment of its roadbed at the point paved, and averred that under the law it was not personally liable for the amount of such claim for such work done. As to the claim for the culvert on Sestin street for which plaintiff sued, defendant denied that any such culvert was necessary, or that it was liable for any such claim, and averred that it had built under its tracks at said point a sufficient culvert to carry off the waters under its tracks, and the culvert built by the plaintiff at said point was not made necessary for any roadbed of defendant or any act, on its part, and it was not liable for the cost of the same.

It prayed that the demands of the plaintiff be rejected at its costs and for general relief.

The district court rendered judgment in favor of plaintiff against defendant, adjudging and decreeing that plaintiff, the city of Shreveport, do have and recover judgment of defendant, the Kansas City, Shreveport & Gulf Railway Company, in the full sum of $7,434.72, with 8 per cent. interest on $1,468.-02 from July 10, 1906, and 8 per cent. interest on $718.47 from October 26, 1906, and 8 per cent. interest on $4,534.45 from February 8, 1907, and 5 per cent. interest on $713.-78 from July 11, 1908, until paid.

It further ordered, adjudged, and decreed that plaintiff's lien and privilege on the abutting property and tracks of the defendant company be recognized and enforced, as follows, to wit, at the crossing of said defendant's line on Southern avenue in the city of Shreveport, La., also at the crossing of said tracks at the intersection of Louisiana and Lake streets in said city of Shreveport and the crossing of said lines over Texas avenue in said city known as the "K. C. S." crossing, and said city's lien and privilege be recognized and enforced over said abutting property and said tracks over all other claims except taxes. It further ordered, adjudged, and decreed that defendant pay all costs of the suit.

It was admitted on the trial that, before any of this work was done by the city, it notified the defendant company repeatedly to do the work, and that it declined or failed to do it, and the city went ahead to do this work, and that defendant knew that it was being done.

In regard to the claim for paving, it was admitted that the city did the work and paid the prices sued for, and that it was necessary for the city to do this work in order to complete the paving of the streets mentioned, that the work was let in the usual manner as required by the laws of the state of Louisiana, that after due advertisement the contract was let, that it cost the city the amount sued for, and that the city paid this amount.

In regard to the Sestin street sewer or culvert, it was admitted that the city did the work, had the work done, and paid the price sued for of $713.78. That this work was let after due advertisement to the lowest bidder, and the work was done in accordance with the advertisement, and the city paid for the work the amount sued for. That what was stated in regard to the notice with reference to the street paving was equally applicable to the culvert under the

tracks of the defendant company at Sestin street.

The act whose constitutionality is questioned by the defendant is Act No. 10 of 1896. It is entitled:

"An act to empower cities and towns (the city of New Orleans excepted) having a population exceeding ten thousand to pave, macadamize or otherwise improve streets and alleys and to levy and collect special taxes and local contribution on real estate abutting the same to defray a part of the cost of such work or improvement."

"Section 1. Be it enacted by the General Assembly of the state of Louisiana, that the municipal authorities of any town or city in this state (the city of New Orleans excepted) having a population exceeding ten thousand people shall have the power to pave, plank, gravel, macadamize or otherwise improve the streets and alleys, or any part thereof not less than (1) one block within the corporate limits, and shall have the power to levy and collect special taxes or local assessments on the real estate abutting the street or alley to be improved for the purpose of defraying a part of the cost of such work or improvement as hereinafter provided.·

"Sec. 2. Be it further enacted, etc. That the owners of real estate so abutting shall pay two-thirds (⅔) of the entire cost of such work or improvement and the corporation shall pay one third out of its general resources provided that where a railway bed and track occupies a portion of the street it shall pay in proportion to the space occupied by its roadbed compared to the entire width of the street and provided further that the intersections of all streets shall be paved at the expenses of the municipality and railroad occupying a portion of same in the proportion to the space the said roadbeds may occupy with relation to the whole intersection.

"Sec. 3. Be it enacted, etc. Whenever the city councils of cities herein described shall resolve to pave or improve any portion of streets or alleys not less than one block or any street or alley it shall pass an ordinance calling for bids for the work of which 10 days' notice shall be given in newspaper published in said city and shall let the contract to the lowest responsible bidder who can give satisfactory security provided said council shall have the right to reject any and all bids; and after the contract has been awarded the council shall provide by ordinance for an assessment for all real estate abutting the street or alley, and on railroad tracks as aforesaid, a portion thereof to be paved or otherwise improved in such manner as to apportion two-thirds of the contract price on the basis of the respective frontage of the real estate so abutting and on the railroad track in the proportion as set forth in section 2 hereof."

The contention of the defendant is that the statute is unconstitutional for the reason that it is violative of article 31 of that instrument, which requires that each law must embrace but one subject, and that must be expressed in the title. It urges that, in so far as the statute is sought to be made to apply to "railroads across the street or in the street," that object is not expressed in the title, and that it does not embrace commercial railroads crossing the streets. It insists that the statute contains two separate and distinct objects. That a railroad right of way is not an "abutter" within the sense of the law assessing cost of paving to abutter. Chicago, M. & St. P. R. Co. v. City of Milwaukee, 89 Wis. 506, 62 N. W. 417, 28 L. R. A. 249; Chicago, R. I. & P. R. Co. v. City of Ottumwa, 112 Iowa, 300, 83 N. W. 1074, 51 L. R. A. 763; Indianapolis & V. Ry. Co. v. Capital Paly & Const. Co., 24 Ind. App. 114, 54 N. E. 1078; Louisiana Imp. Co. v. Baton Rouge Electric & Gas Co., 114 La. 541, 38 South. 444.

Plaintiff invokes the rule that the constitutionality of statutes must be upheld whenever possible, that courts will lean towards such upholding, and that a law will not be set aside for unconstitutionality unless it so clearly appears obnoxious to the organic law that no other conclusion is possible. Board of Medical Examiners v. Fowler, 50 La. Ann. 1367, 24 South. 809; Grinage v. Times Democrat, 107 La. 121, 31 South. 682; State ex rel. Labauve v. Michel, 121 La. 374, 46 South. 430.

This court does not think that the statute is unconstitutional. It deals with but one subject, and that is expressed in its title. Plaintiff maintains: That under the general law and jurisprudence railroad rights of way, beds, and tracks, whether running through the county or rights of way acquired along or across public roads or streets under franchises obtained, are regarded, considered, and treated as real estate. That in the act under consideration they are to be looked upon and treated as real estate. That when

a railroad enters a city, town, or village it must have ground to do it on; it must have ground for its terminal facilities, its depots and sheds, etc. It has to cross some streets and run along others; it has to acquire rights of way for its roadbed and tracks. That this is a matter of general information and within the personal knowledge of every one. That every reader of an act like the one before the court knows it. Such rights as railroads must acquire for entering a city are real rights. "Real rights" are real estate in the legal sense of that word. Civ. Code, arts. 448–462 et seq. That the right to run along streets or to cross them, to occupy space, carries the right to lay the roadbeds and tracks of the railroads on or in the streets. The right or franchise to lay the roadbed and tracks in the streets may be an incorporeal thing, according to the definitions of Civ. Code, art. 470; but the incorporeal right becomes merged into the corporeal when the cross-ties, steel rails, and bolts and fastenings are put down in the cement, mortar, and concrete of the paved street—there are then the incorporeal right and the corporeal thing. Civ. Code, art. 471; Kennedy v. Succession of McCollam, 34 La. Ann. 571; Louisville & N. R. Co. v. Terminal Co., 120 La. 982, 45 South. 962.

It cannot be said that the general terms used in the statute, "local contributions on real estate abutting the same" (abutting on the streets), excludes railroads, for they may well own the property abutting on the streets, and so the statute as it reads does apply to such property so abutting.

Defendant urges: That these expressions found in the statute of 1896 were not intended to apply to an abutment at both ends of the tracks as they enter and leave the streets. That it certainly should not be required to pay both for the space occupied by its roadbed "as a railroad," and then in addition pay as an abutting real estate owner. That such double liability was not provided for by the statute, and to inflict both on the defendant is unfair and an unjust discrimination against it. It insists: That the only charge that can be made against it is that provided by the statute and no more. That the city had no right to tear up its tracks and put under it an expensive quality of cross-ties reinforced by concrete, as it has done. That if it had the right to pave the crossing it had no right to put in a new track according to its idea of what was needed, at least in the absence of any evidence that the ties used by defendant were worn out if bad or unsuitable. That the ordinance assessing defendant for the paving did not include the cross-ties nor the concrete under the ties nor the sidewalk or supposed sidewalk built across defendant's right of way. That, at most, the only charge that could be made would be for the space occupied by its roadbed. It urges: That the statute was passed wholly with reference to street railroads running along the streets, and not to commercial railroads running across the street. That a street railway might be benefited by paving the street because it would furnish an easy means of egress and ingress from their cars, but no such benefit would accrue to a commercial railroad having its own depots and not using the street for any purpose if at all. Detroit, Grand Haven & Milwaukee R. Co. v. City of Grand Rapids, 106 Mich. 13, 63 N. W. 1007, 28 L. R. A. 793, 58 Am. St. Rep. 466; Chicago, M. & St. P. R. Co. v. City of Milwaukee, 89 Wis. 506, 62 N. W. 417, 28 L. R. A. 249; Mt. Pleasant v. Baltimore & O. R. Co., 138 Pa. 365, 20 Atl. 1052, 11 L. R. A. 520. That it was entitled to prior notice of the intended work and assessment and afforded an opportunity at some time and place to inquire into the necessity of the work and to inquire into the validity and amount of the assessment. That to cut it off from so doing would be to deprive it of

its property for public purposes without compensation and without due process of law. That in the case before the court the paving was of no benefit to the company, but an injury to it, and it should be freed from paying any portion of the cost.

In one part of defendant's brief it contends that it cannot be held to a personal liability for any part of the work. Barber Asphalt Paving Co. v. Watt, 51 La. Ann. 1345, 26 South. 70; S. D. Moody & Co. v. Chadwick, 52 La. Ann. 1888, 28 South. 361. In another part that, even if judgment should be rendered in plaintiff's favor, the judgment could not be executed by seizure. That a part of a railroad cannot be seized and sold, and therefore no lien or privilege can be acquired as against only a part of it. Yellow River Improvement Co. v. Wood County, 81 Wis. 554, 51 N. W. 1004, 17 L. R. A. 92; National Foundry & Pipe Works v. Oconto Water Co. (C. C.) 52 Fed. 45; East Alabama Ry. Co. v. Doe, 114 U. S. 353, 5 Sup. Ct. 869, 29 L. Ed. 136; Buncombe County Com'rs v. Tommey, 115 U. S. 135, 5 Sup. Ct. 626, 1186, 29 L. Ed. 305; Industrial & Mining Guaranty Co. v. Electrical Supply Co., 58 Fed. 741, 7 C. C. A. 471; Pennsylvania Steel Co. v. J. E. Potts Salt & Lumber Co., 63 Fed. 13, 11 C. C. A. 11; Greenwood, A. & W. Ry. v. Strang (C. C.) 77 Fed. 500; Freeman on Execution, p. 914, § 179.

The plaintiff contends: That it is well recognized in the law relating to street improvement by municipalities that the paving of streets, the necessity therefor and special assessments against abutting property on the theory of benefits accruing thereto from such improvement, is a question of legislative expediency, and its action is a political question in the sense that it pertains to the legislative department. That it is a question for the city council to determine, and not for the courts. That, if the council determines to embark upon a system of street improve-

ment under a statute authorizing same, such action becomes the public policy of the municipality, and when a given street is selected as one to be paved, on the theory that its being paved will result in benefit to the abutting property holders as well as to the municipality as a whole, such selection becomes part of such public policy, and the question of whether or not it is of benefit or advantage to the property holders to pave the street is for determination alone by the council, and their action in this regard is conclusive, and not reviewable by the court unless in a clear case of arbitrary assessment.

That McQuillan, in his recent work (1904) on Municipal Ordinances (page 820), says:

"It would seem that the Legislature is competent to judge of benefits. This is assumed by the current of authority. A public improvement having been made, the question of determining the area benefited by such improvement is generally held to be a legislative function, and such legislative determination, unless palpably unjust, is usually conclusive"—citing Williams v. Eggleston, 170 U. S. 304–311, 18 Sup. Ct. 617, 42 L. Ed. 1047; Illinois Cent. R. Co. v. Decatur, 147 U. S. 190, 13 Sup. Ct. 293, 37 L. Ed. 132; Spencer v. Merchant, 125 U. S. 345–355, 8 Sup. Ct. 921, 31 L. Ed. 763; Spencer v. Merchant, 100 N. Y. 585, 3 N. E. 682; Hagar v. Reclamation District No. 108, 111 U. S. 701, 4 Sup. Ct. 663, 28 L. Ed. 569.

To the same effect is 2 Dillon on Mun. Corp. (4th Ed.) § 752, approved in Parsons v. Dist. of Columbia, 170 U. S. 45, 18 Sup. Ct. 521, 42 L. Ed. 943.

That McQuillan says further (page 821):

"The series of decisions of the United States Supreme Court in April, 1901, fully sustain the principle that the question of determining the property or area benefited is one for the legislative department. These principles were declared: (1) The apportionment of the entire cost of a street improvement upon the abutting lots according to their frontage, without any judicial inquiry as to their value or the benefits they receive, may be authorized by the Legislature; and this will not constitute a taking of property without due process of law. (2) The legislative act need not provide for a hearing, allowing the property owner to show that his property was not benefited to the amount of the assessment. (3) It is within the power of the Legislature to create special taxing districts, and to charge the cost of a local improvement,

in whole or in part, upon the property in such district, either according to valuation or to superficial area or frontage."

In support of these propositions, the author cites Town of Tonawanda v. Lyon, 181 U. S. 389, 21 Sup. Ct. 609, 45 L. Ed. 908; City of Detroit v. Parker, 181 U. S. 396, 21 Sup. Ct. 624, 45 L. Ed. 917; French v. Barber Asphalt Paving Co., 181 U. S. 324, 21 Sup. Ct. 625, 45 L. Ed. 879; Shumate v. Heman, 181 U. S. 402, 21 Sup. Ct. 645, 45 L. Ed. 922; Webster v. City of Fargo, 181 U. S. 394, 21 Sup. Ct. 623, 45 L. Ed. 912—and says:

"These cases fully explain the Norwood-Baker Case, 172 U. S. 269, 277, 282 [19 Sup. Ct. 187, 43 L. Ed. 443], and declare that it is to be limited to its special facts."

Plaintiff further says that in Smith's Modern Law of Municipal Corporations (volume 2, in section 1232) is the following:

"In the opening of a street and the fixing of the assessment district the action of the council is conclusive"—citing Brown v. City of Saginaw, 107 Mich. 643, 65 N. W. 601.

Also the following:

"The determination of a city council, having power under the charter, that an improvement is a benefit to abutting property, is conclusive in a court of law." Id.

### Opinion.

The common council of a city, in determining to have a particular street paved, is acting upon a subject strictly within its general power of administration, and is not called upon to give special prior notice to each and every individual citizen or property owner of what it proposes to do. It is acting in the exercise of its police power of regulation for the public good, and the individual citizen has to subordinate his individual opinion as to what is best for the local public benefit to the judgment of the body charged by law with the duty of looking after those interests. Kelly v. Chadwick, 104 La. 731, 732, 29 South. 295; N. O. Gaslight Co. v.

Drainage Commissioners, 111 La. 840, 35 South. 929. The complaint of the defendant that the statute does not afford it an opportunity to be heard and assert its legal rights is not well founded. The statute is silent on the subject, and the contest now before us is evidence of the fact that its rights were not foreclosed by the action. Hodge v. Muscatine Co., 196 U. S. 281, 25 Sup. Ct. 237, 49 L. Ed. 477.

The action of the city in so far as it was based on the statute of 1896 fixes the proportion of liability for which the railroad is chargeable for the cost of paving, and the city is not permitted to depart from the statute. Kelly v. Chadwick, 104 La. 733, 29 South. 295. Anything assessed against the defendant in excess of what the statute declared should be its proportion of cost, it had the legal right to resist.

### Extra.

The defendant is in error in supposing that the common council of Shreveport is acting in the matter of the claims which it advances against it, entirely by virtue of and under the provisions of Act No. 10 of 1896.

In the matter of the Sestin street culvert, for instance, it is not basing itself upon the provisions of that act; so, also, in the matter of the claim against defendant for the costs of sidewalks. No. ——— of ———.

So, also, for reimbursement of costs incurred in rearrangement of tracks to conform to new pavement on failure to do so itself.

The act attacked as unconstitutional is an enabling statute conferring powers upon municipal corporations touching the paving of streets. It deals with that single subject. In an act of such a kind might reasonably be expected to be found provisions relating to the method which those corporations should be permitted to have recourse to in order to obtain the paving or the costs of making

such paving. Provisions on that subject would be germane to the subject-matter of the paving of the streets. This court is of opinion that the statute dealt with one subject, and that subject was expressed in the title.

The statute authorized "the levying and collection of special taxes and local contributions on real estate abutting the streets" without designation as to who should own such abutting property or what their occupation might be. Railroad companies might well be owners of such property, and, if so, their property would fall under the general terms of the statute independently of being specially named. The fact that they might be referred to by name in the body of the act, while unnecessary, would not nullify the statute.

With respect to the culvert constructed by the city at Sestin street, it appears from the admissions in the transcript that the defendant was informed by the city authorities that the drainage through and over the streets of the city was seriously interfered with and impaired by the construction of its roadbed through the city and called upon it to take proper and effective measures to remedy the evil. That the defendant neglected and failed to do so. That under that condition of affairs the city itself took the steps which the situation called for, and in this suit claims reimbursement of the amount expended by it in discharge of the defendant's obligations and duty in the premises.

It is shown that the defendant failed to take proper and sufficient measures to protect the public health and interests from insufficient drainage resulting from the construction of its roads through the city. The grounds of resistance of the claim are not very clearly set out; but we understand it to say that the measures taken by it to secure proper drainage were sufficient when the road was constructed, and that it ade-quately performed its duty at that time and could not be made to meet subsequently arising conditions.

We cannot say whether the measures taken by the defendant at the time were sufficient or not; but we think that defendant's duty to protect the city from improper drainage resulting from the presence of its road through and over the streets is a continuing duty and should be met and performed by it as the necessity for the same arises. The court is of opinion that the claim of the city on that branch of this case is just and well founded. New Orleans Gaslight Co. v. Drainage Commissioners, 111 La. 840, 35 South. 929.

Several of the items sued for do not fall within the purview of Act No. 10 of 1896, nor are they based on that statute, as, for instance, the culvert on Sestin street, the sidewalks on Texas and Southern avenues. Under the city charter, the cost of constructing the latter is secured by lien and privilege on the abutting real estate. Section 16, Act. No. 158, p. 306, of 1898.

The first item has already been considered. It is secured by no privilege.

It appears that on Texas avenue the defendant company owns a right of way or roadbed fronting 163.4 feet on each side of that highway. At this crossing the plaintiff city paved the space on each side reserved for a sidewalk, claiming that the total work aggregated 360 square yards at $2.20.

At the same point 9 tracks of the defendant company cross Texas avenue, and the plaintiff city caused the whole street between the defendant's property lines to be paved. In doing this work it is claimed that 252.30 cubic yards of concrete, costing $2,270.70, and 522 creosote ties, costing $261, were placed under the tracks as a foundation for the railway superstructure.

It further appears' that, after due notice, the defendant company refused to relay its

tracks so as to conform to the new pavement, and that the city was forced to let out the contract for the work. In regard to the claim for paving, it is admitted that the city did the work and paid the prices sued for, and that it was necessary for the city to do this work in order to complete the paving of the streets mentioned, that the work was let in the usual manner as required by the laws of the state of Louisiana, that after due advertisement the contract was let, and that it cost the city the amounts claimed in the petition. The relaying of the tracks was a necessary part of the paving work for which the defendant is responsible. After persistently refusing to relay its tracks so the work of paving might proceed, the defendant company complains with bad grace that the concrete and ties were more durable and costly than were necessary for railroad purposes. We are of opinion that this special work was properly charged to the defendant. At the Texas avenue crossing the defendant was also charged with paving for the space covered by its tracks and cross-ties, amounting to 373.72 square yards, and with paving for two-thirds of the space between the tracks, amounting to 176.02 yards, at $2.20 per square yard. The first item seems to have been charged against the railroad tracks occupying the street, and the second against the defendant as abutting owner. By stipulation filed in this court, it is admitted that the roadbed of defendant, including the portion under the sidewalk, occupies 560 square yards, at $2.20— $1,232. It is further admitted that 89.07 square yards represents the city's one-third of the space between the tracks, and consequently that 178.14 yards represents the two-thirds charged to the defendant.

In the account sued on the plaintiff claims 784.32 square yards for paving in sidewalks and tracks. Under the admission of counsel this work contains only 560 yards, and it

results that there is an overcharge of 174.82 square yards—$418.36.

As to the space between the tracks there is an undercharge of 2.12 square yards, but the city cannot recover more than she claims.

While Act No. 10 of 1896 may not specifically provide for the case of a railroad crossing a street in the middle of a block or square, it does provide that railroads in the street shall pay a certain proportion of the cost of paving the same. The reason and spirit of the law apply to a railroad crossing a street at an angle, and the court is forced to the conclusion that such railroads were within the legislative intent.

The defendant railroad owns its right of way on both sides of Texas avenue. The answer admits its ownership of "the roadbed at the places mentioned in the petition," but denies that the plaintiff has any lien or privilege "on the segment of its roadbed at the point paved." If the defendant company owns the ground on each side of the crossing on Texas avenue, then it must be an owner of real estate abutting on said highway. Defendant is therefore responsible both as an abutting owner and as owner of the railroad tracks in the street. Its nine tracks occupy nearly all of the crossing, leaving small spaces between for which the paving has been assessed two-thirds to the defendant, and one-third to the city of Shreveport. This seems to us to be a proper and just distribution of the cost of paving the street at that point.

The conditions of the Southern avenue crossing are the same as that on Texas avenue. The total charge of $1,468.02 is sustained by the evidence.

At the third and last crossing, where the defendant's two tracks in Lake street cross Louisiana street, the defendant was charged with $718.47 as its part of the cost of paving the intersection. It is further admitted that the space occupied by the two tracks

equals 117.33 square yards, and that the cost of paving same amounts to $258.13. Under Act No. 10 of 1896, the defendant cannot be charged with more than its proportion of the intersection based on the relative space occupied by its two tracks. On this item the demand of the city is reduced from $718.47 to $258.13.

The defendant company contends that no personal judgment can be rendered against it, and that no lien or privilege can be enforced against its right of way. As to the culvert, the demand is purely personal for money expended for the use and benefit of the defendant. The demand for reimbursement of the expense of paving sidewalks under section 16 of Act No. 25 of 1878 is in personam secured by lien and privilege on the abutting property. This section in the pleadings has not been attacked as unconstitutional.

Section 4 of Act No. 10 of 1896 provides:

"That the sum assessed against said real estate and railroad track and roadbed shall be due and collected within (10) ten days after the completion of the work and its acceptance by the mayor and the city engineer, and if not paid within the said (10) ten days the municipal authorities shall have the power to proceed by suit against the said owners, and said real estate and railroad company and tracks to collect the delinquent assessment and the said municipality shall have a special privilege on said property or properties to secure the payment of the sum assessed against it with 8 per cent. interest per annum thereon from the expiration of said (10) ten days until paid."

These provisions of the statute are not assailed in the answer as unconstitutional.

A railroad company cannot place its tracks in the street of a city or town without the special permission of the municipal authorities. When such permission is obtained, Act 10 of 1896 imposes on the railroad the burden of paying a certain proportion of the expense of paving the street occupied in part by its track and roadbed. This is a condition annexed to the use of the street by the railroad company.

We know of no law warranting the charge of 8 per cent. interest on the cost of the sidewalks. It is therefore ordered, adjudged, and decreed that the judgment below be amended by deducting the amount of $418.36, and the further amount of $460.34, on the items specified in the foregoing opinion; and it is further ordered that said judgment be further amended by substituting 5 per cent. instead of 8 per cent., interest on the items for paving sidewalks; and it is further ordered that said judgment, in so far as it allows a lien or privilege for culvert item, be annulled, avoided, and reversed; and it is further ordered that said judgment be further amended by restricting the lien and privilege for the sidewalk items and for the items of paving between the tracks to the abutting property; and it is finally ordered that said judgment, as thus reversed in part, and as thus amended, be affirmed, and that the plaintiff pay the costs of appeal.