No. 13,505.

JOHN M. KELLY VS. EDMUND H. CHADWICK.

SYLLABUS.

ON MOTION TO DISMISS APPEAL.

1.  Where a local assessment, or charge upon property for street improvements
    is made, or levied, by compulsion of law, without regard to the assent or
    dissent of the abutting proprietors, it presents the case of *a tax* in the sense
    in which the word is used in the Article of the Constitution conferring
    jurisdiction upon this court.
2.  Where the answer impeaches the validity of the city ordinance on the ground
    that it imposes a greater burden on the abutting property than the paving
    statute authorizes, there is presented the issue of legality, *vel non*, of the
    tax sought to be collected, and this court has jurisdiction without regard to
    the amount involved.

ON THE MERITS.

1.  The city of New Orleans, by Act No. 119 of 1886, as amended by Act No
    142 of 1894, was authorized by a two-thirds vote "in its discretion to pro-
    vide for the paving or banquetting of any street or portion thereof at the
    expense of the whole city, and to thereupon force, impose, and collect of the
    front proprietors of lots fronting on said streets a special assessment in
    proportion to frontage of three-quarters of the cost of said improvement.·
    Under the authority so conferred the city, by a two-thirds vote by ordinance,
    ordered the paving of Hagan avenue from Canal street to Esplanade avenue,
    and caused the contract for the construction of the work on certain terms
    and conditions to be sold at public auction.  The ordinance provided that
    under the provisions of the act recited the cost should be borne by the
    whole of the city, but that in accordance with the same there was levied on
    all the front proprietors of lots fronting on said streets three fourths of the
    cost of said improvement.  It was expressly stipulated that the contractor
    should accept in settlement with the city, in part payment of the cost to
    the extent of the proportion of cost for which the abutting property was
    liable, a transfer of the rights of the city to the same with subrogation ;
    this proportion to be fixed by the City Engineer and the Commissioner of
    Public Works and evidenced by certificates signed by them.  The work was
    executed to the satisfaction of the city, the cost ascertained and certificates
    given.  The present suit is against one of the owners of abutting property
    for recovery of his proportion of cost.  Without questioning the consititu
    tionality of the law by which the General Assembly conferred the said
    authority upon the city, or that the work of public improvement was as a
    whole a work of special local public benefit, or that as a whole the work as
    executed did not carry out such purpose, the defendant resisted the claim on
    a number of grounds.  *Held* : That the fact that some particular piece of
    property along the line of work might not be benefited would not justify its
    owner in preventing the execution of the work on the ground of the uncon-

stitutionality of the ordinance. It is not necessary for the purpose of the legality or the constitutionality of the ordinance as to liability of the abutting property that it should be benefited in every possible respect, or directly, or immediately, benefited. The work is done for the benefit of the local public, and assessments levied upon the abutting lots, not because of any special benefits that each owner may derive from it, but because the local public good demands it. When the General Assembly has itself fixed in what proportion and by what standard the cost of the work is to be apportioned, the judiciary is not authorized to alter it and substitute for a fixed legislative standard by frontage, a judicial standard based upon actual benefits received, measured by values or enhanced values established by proof.

2. The fact that from some unavoidable cause the work has not been extended as far as contemplated by the ordinance and contract, does not cause the contractor to lose the entire benefit of the work done, where the general purpose of the work has not failed. The abutting owners can only exact that the amount of the cost be properly reduced. The fact that in the ordinance and contract the contributive share of the abutting properties for the cost of the work was fixed upon an erroneous basis, does not work a forfeiture of the whole assessment. All that abutting owners can claim is that the proper proportion should be ascertained, and their liability not extended beyond it.

A PPEAL from the Civil District Court, Parish of Orleans— *St. Paul, J.*

*Denegre, Blair & Denegre* for Plaintiff, Appellee.

*George L. Bright* and *Edwin N. Whittemore* for Defendant, Appellant.

The opinion of the Court on motion to dismiss was delivered by BLANCHARD, J.

The opinion of the Court on the merits was delivered by NICHOLLS, C. J.

Carried to the Supreme Court of the United States by Writ of Error.

ON MOTION TO DISMISS APPEAL.

BLANCHARD, J. The ground of the motion, made by plaintiff and appellee, is want of jurisdiction *ratione materiae* appearing on the face of the record, the amount involved being $638.80, or a sum below the minimum jurisdictional limit of this court.

The City of New Orleans let a contract to A. J. Christopher to pave Hagan avenue from Canal street to Esplanade avenue.

As far as it was possible to do so the contract was executed. It was not wholly executed for the reason that Hagan avenue, for a small part of its line between the points indicated, had not been opened as a street.

Christopher transferred his rights and claims under the contract to the plaintiff.

Defendant owned certain lots having a frontage on Hagan avenue along that part of the street paved. An assessment of the amount he was due as front proprietor, under the contract for paving the avenue, was made by the City Engineer and Commissioner of Public Works. He declined to pay and this suit was brought to enforce payment.

The petition alleges the contract with Christopher was made, and the paving done, in accordance with Act No. 73 of 1876 and with Section 37 of Act No. 20, approved June 23, 1882, entitled "An Act to Incorporate the City of New Orleans," etc., as amended by Act No. 119 of 1886, as amended by Act 142 of 1884, and in accordance with City Ordinances Nos. 11,184, 11,349 and 12,136, and other laws and ordinances on the same subject matter.

It is further averred that, prior to the making of the contract, the resolution to pave the street was passed by the City Council by a two-thirds vote, and that notice of intention to pave the street and enact the ordinance relative thereto was published in the official journal once a week for four weeks.

A lien and right of pledge upon the property and its proceeds is claimed.

The prayer is for judgment against the defendant for the amount sued for, with interest, and with recognition of the lien claimed upon the property, and condemning the property to be sold and the proceeds applied to the payment of the indebtedness.

A supplemental and second supplemental petition were filed, which, in so far as the motion to dismiss the appeal is concerned, need not be further referred to.

Among other defenses set up, it is averred, on behalf of the defendant. that the city ordinances under which plaintiff claims are unconstitutional and illegal, and the grounds for this charge of unconstitutionality and illegality are set forth in detail and at length.

From the several answers filed by defendant we think it sufficiently

and affirmatively charged that the city ordinances, and the contract predicated upon same, transcend the powers and authority granted by the statutes relating to the subject of street paving in the City of New Orleans.

This brings the case, so far as the jurisdictional question raised is concerned, within the rule announced in City of Shreveport vs. Prescott, 51 La. Ann. 1895.

In that case, as in this, the assessment, or charge upon property for street improvement was made, or levied, by compulsion of law without regard to the assent or dissent of the abutting proprietors. It was purely a forced contribution, the property owners having no voice whatever in the matter.

The law under which the proceeding here was taken (Section 37 of Act 20 of 1882, as amended by Act 119 of 1886, as amended by Act 142 of 1894) authorized the City Council to levy the charge by simple ordinance (a two-thirds vote adopting same), without any precedent application of the owners of property.

The law under which the proceeding in the Prescott case was taken (Act 10 of 1896) was, in this respect, the same, save that a majority, instead of two-thirds, vote sufficed to pass the paving ordinance and levy the assessment.

We held, in the latter case, that the forced contribution for street improvement purposes, under such circumstances, was *a tax* in the sense of the constitutional provision conferring appellate jurisdiction upon this court.

So, too, we must hold in the instant case. In the Prescott case the abutting proprietors impeached the validity of the city ordinance on the ground that it imposed a greater burden upon their property than the paving statute, correctly interpreted, permitted. Hence, the illegality of the tax, or forced contribution, assessed against them.

This court, entertaining the view that the ordinance was not in keeping with the terms of the statute, and to the extent not in keeping with it injurious to the abutting owners, annulled the same, reserving to the City Council of Shreveport the right to reform the ordinance so as to conform to the law.

Here the like contention is made—that the ordinance exceeds the authority bestowed by the statute, and injuriously affects the property owner.

There is, therefore, presented the issue of illegality, *vel non,* of the tax sought to be collected, and this court has jurisdiction.

Constitution of 1879, Article 81.

Constitution of 1898, Article 85.

The authority relied upon by appellee's counsel to sustain his motion to dismiss—the Rosetta Gravel, Paving and Improvement Company vs. Adler, 52 La. Ann. 689—is not in point.

For these reasons it is ordered that the motion to dismiss the appeal be denied.

### On the Merits.

### Statement of the Case.

The opinion of the Court was delivered by

NICHOLLS, C. J.   The plaintiff sues to recover from the defendant, as owner of property upon Hagan avenue, the sum of six hundred and thirty-eight 80-100 dollars, with recognition that payment of same was secured by lien and privileges on said abutting property, and the proceeds thereof, and condemning the property to be sold, and applied to the payment of said claim.

The amount claimed was declared to be the amount due by defendant and the said property as their contributive share of the cost of paving said Hagan avenue, under a contract made by the City of New Orleans and one A. J. Christopher, who had assigned his claim under said contract to the plaintiff.   The amount so claimed was based upon a certificate signed by the City Surveyor and Commissioner of Public Works of the City of New Orleans, which certified that "A.. J. Christopher, contractor for paving Hagan avenue with lake shells, as per Ordinance No. 12,136 of the City Council, adopted March 31, 1896, has constructed certain work under his contract, and that there is now due him by Edmund H. Chadwick, for his portion of work done on Hagan avenue (river side), between Carondelet street and Toulouse street, as itemized below, the sum of six hundred and thirty-eight and eighty one

hundredths (80-100) dollars, with interest at the rate of six per cent. per annum from date, until paid.

| | | |
|---|---:|---:|
| Lumber 4355.3 ft. B. M. at $35.00 per M................ | $151 | 74 |
| Shells 83,947 sq. yds. at $1.35 per yd.................... | 1133 | 28 |
| Filling 55.95 cu. yds. at 90c. per yd...................... | 50 | 35 |
| Cost of block ........................................ | $1335 | 37 |
| City's portion, one-fourth ............................ | 333 | 84 |
| Property holders .................................... | $1001 | 53 |
| Mean length of block 287,935 ft. | | |
| Cost per lineal foot to property holder............$1 73-915 | | |
| Your proportion of cost 307.2 lin. ft. at.......... 1 73-915 | | |
| Per foot ............................................ | $534 | 27 |
| Lumber 2,986.5 ft. B. M. at $35.00 per M................ | 104 | 53 |
| Total ........... ........................................ | .$638 | 80 |

(Approved)   A. C. BELL,
                    *City Engineer.*
(Approved)   W. L. McGARY,
            *Commissioner Public Works."*

"Recorded in Mortgage Office Book 572, Folio 374, New Orleans, October 5th, 1896."
                (Signed)   GEORGE GUINAULT."

The petition contained allegations in the nature of inducement and others customary in actions of that character.

The cause of action and the pleadings were similar to those of the case of the Barber Asphalt Company vs. John Watt, 51 An. 1345. and Moody & Co. vs. Chadwick, 52 Ann. 1888, with such changes as would result from the fact that the work constructed was upon a different street, the contractor was a different person, and the sums involved were different in amount.

Defendant resisted the claim by a number of exceptions and defenses.

The case went to trial, evidence was adduced and the case was con-

tinued for argument. While matters were in this situation a decision was rendered by this court in Barber Asphalt Company vs. Watt (reported in 51 Ann. 1345), in which it was announced that under the provisions of the paving statute, Act No. 113 of 1886, owners of property abutting on the street paved were liable only for their proportion of total cost of paving the street; that they could not be charged with the cost according to their frontage along the front of the square in which their lots were situated; that this was not the rule of apportionment fixed by the statute; that for the sum assessed against their property no *personal* liability attached to the abutting owners beyond the value of the property affected; that the proceeding was purely one *in rem* acting on the property benefitted and none other.

Defendant then filed a supplemental answer. He denied the existence of the ordinance alleged in plaintiff's petition, and if any was shown, charged that it was illegal and unconstitutional for the reasons set forth in his answer, originally, and further:

1. The ordinance provides that all persons who had not paid a city license are denied the right to bid for the work, and provides that their bids would not be considered.

2. Because the ordinance, including the specifications, requires each property owner to pay for the quantity and quality of materials and cost of work in front of his property, and not for his proportion of the whole work according to frontage.

3. Because the ordinance and specifications require the contractor to employ only *bona fide* resident citizens of the City of New Orleans as laborers on the work, and it deprives the citizens of this State and of each and every State, and the inhabitants thereof, of their privileges and immunities of citizens in the several States, secured to them by the Constitution of the United States, Sec. 2, which provides, "The citizens of each State shall be entitled to all privileges and immunities of the citizens of the several States."

4. Because the City Charter provides that the work shall be given to the lowest bidder, and the ordinance and specifications exclude the lowest bidder and does not admit of competitive bidders.

5. Because the ordinance imposes a liability on the property owner irrespective of the question whether or not his property is benefited or damaged by the pavement.

Plaintiff, with leave of the court, filed a supplemental and amended petition in which he averred that since the evidence in the case was closed, the Supreme Court of this State, in a certain cause, entitled the

Barber Asphalt Company vs. John Watt, No. 12,927 of the docket of said court, had passed upon and decided the principal issues involved in the cause, and in said cause said court had decided that the property owner's proportion of the cost of paving a street should be determined by ascertaining the entire cost of the work assessable to the property fronting thereon, and apportioning the same to said property in pro- portion to. foot frontage; that said decision had revealed to plaintiff that the City Engineer's computation of the amount due by defendant was erroneous; that the cost of one block, instead of the entire work, was taken as the basis of apportionment, according to foot frontage, the result being that the amount claimed in his original petition was in excess of the amount due by defendant under the law as construed by the Supreme Court as aforesaid. That plaintiff desired to amend his petition by reducing the amount of his claim to five hundred and ninety-five and 54-100 dollars (594.54); and he averred that the total cost of said paving work assessable to property fronting there- on was $10,519.22; the total frontage of the property thereon and subject to assessment therefor, was 5,425.21 feet; and the amount chargeable per lineal foot to property frontage thereon was $1.93-895; that said last named amount, multiplied by 307.2 feet, the frontage of defendant's property, produces $595.54, and which plaintiff now claims of defendant.

In view of the premises he prayed that leave be given him to file this amended and supplemental petition; that defendant be duly cited to appear and answer the same; and that, after due proceedings had, he have judgment as prayed for in his original petition, except that the amount of said judgment be for the sum of five hundred and ninety- five and 54-100 dollars, instead of six hundred and thirty- four and 80-100 dolarsl; and further prayed for general relief.

He subsequently filed with leave of the court, a second supplemental and amended petition, in which he averred that he desired to correct a mistake in calculation made in his first supplemental and amended petition, wherein it was stated that the total cost of said paving work assessable to the property fronting thereon was $10,519.22, the total frontage of property thereon, and subject to assessment thereof was 5,425.21 feet, and the amount chargeable per lineal foot to property fronting thereon was $1.93-895.

That he had since ascertained, and now averred, that the foregoing figures did not include that portion of the work contracted for, and

·a necessary incident of the paving work, which consisted of curbing, wings, etc., and the lumber used for such work adjacent to the side-walks along the said street to be paved; that the entire cost of said work was $1.89.375, or $0.34906 per lineal foot; that accordingly, the amount chargeable per lineal foot to property on said paving street was not $1.93-895, but $1.931-895 plus $0.3406, making the total due by defend-ant's property, having a frontage of 307.2 feet, the sum of $702.86, which was the true amount due plaintiff.

That plaintiff was willing, to avoid confusion, to waive the excess of what was due as aforesaid, over the sum shown to be due by the cer-tificate of the City Engineer, filed as exhibit of its original petition, in order that he might have judgment for the amount originally prayed for.

Defendant first excepted and under reservation of his exceptions answered these two petitions.   He excepted to the same for the general reason that the matters therein contained and as in them stated, were insufficient in law for plaintiff to have and maintain the action and specially because the pretended ordinances of the City of New Orleans, as recited in plaintiff's petition, and his alleged contract were illegal and unconstitutional, and therefore null and void for the reasons set forth in the answer and supplemental answers heretofore filed, which defendant reiterated in the same manner as if they were again specially set forth.   That the city ordinances and specifications required the con-tractor to employ only *bona fide* resident citizens of the City of New Orleans as laborers on the work and were therefore contrary to the Con-stitution of the State of Louisiana, and Article IV., Sec. 2, of the Constitution of the United States, and to the XIV Amendment of the Constitution of the United States.

That the paving of the streets in front of his property had been of no benefit to it; on the contrary, had damaged it, and the rendi-tion of any judgment against him was taking his private property for public purposes and was contrary to the Constitution of the State of Louisiana (Article 167) and contrary to the Constitution of the United States (Article V).

In his answer he pleaded the general issue and prayed for judg-ment, and that all liens recorded and privileges recorded against his property to secure plaintiff's claim be cancelled.

Simultaneously with plaintiff's filing his amended petition, the case was on his application reopened for the purpose of allowing ·him

to make the corrections mentioned in his supplemental petition.

New evidence was adduced including a new certificate signed by the City Engineer and Commisisoner of Public Works declared to have been issued in lieu of the first certificate and to apportion the cost in accordance with the decision of the Supreme Court in the case of the Barber Asphalt Paving Company vs. John Watt. It fixed $702.28 as the proportion of the cost of construction for which defendant's property was liable.

The court rendered judgment in favor of the plaintiff against the defendant for the sum of six hundred and thirty-eight dollars and eighty cents, with six per cent. interest thereon from 24th September, 1896, and costs of suit, with recognition of lien and privilege on the property described in the certificate, and on the proceeds thereof; and ordered the property to be sold and the proceeds applied to the payment of plaintiff's claim for the amount adjudged.

Defendant appealed.

Ordinance 11,849 of the Common Council is as follows:

> "Mayoralty of New Orleans.
> "CITY HALL, January 30th, 1896.
> "No. 11,849, Council Series.

"An Ordinance relative to the paving of Hagan avenue, from Canal street to Esplanade avenue, with lake shells, under Act 119 of 1886, as amended by Act 142 of 1894.

"Whereas, the Council did, by Ordinance No. 11,184, C. S., announce its intention to direct the pavement of Hagan avenue from Canal street to Esplanade avenue, with lake shells, under the provisions of Act 119, of the Acts of 1886, as amended by Act 142 of 1894, and to levy an assessment for three-quarters of the cost thereof on the front proprietors on said street according to frontage; and, did, by said ordinance, direct the Clerk of the Council to publish notice of said intention in the official journal, once a week, for four weeks; and whereas, the said publication of notice of intention has been made in due form of law, and official notice thereof brought to this Council:

"Section 1. Be it ordained by the Common Council of the City of New Orleans, two-thirds of all the members thereof concurring, That the City Engineer is hereby instructed to immediately prepare plans and specifications for the paving of above named streets with lake shells, and report the same to the Council.

"Section 2. Be it further ordained, etc., That as soon as said plan and specification are approved by this Council, the Comptroller is ordered and directed to advertise for ten days for bids of the paving of above named streets with lake shells, according to said plans and specifications, and under the provisions of this ordinance, the Council reserving the right to reject any or all bids.

"Section 3. Be it further ordained, That the cost of paving said street, as herein provided, and as established by the accepted bid, shall be borne by the whole of the City of New Orleans, but that in accordance with the provisions of Act No. 114 of the Acts of 1886, as amended by Act 142 of 1894, there is hereby forced, imposed and levied on all the front properietors of lots fronting on said street, three-fourths of the cost of said improvement and pavement, exclusive of the cost of intersections, said assessment to be levied on properties to the frontage of each property on said street, and to bear thereon as a first privilege, superior to the vendor's lien, and all other privileges and mortgages.

"Section 4. Be it further ordained, That as soon as said improvement and pavement is completed and accepted, square by square, the City Engineer and Commissioner of Public Works be directed to measure, or cause to be measured, the frontage of each front proprietor on such completed and accepted squares, and to prepare and record in the mortgage office of the Parish of Orleans, a certificate charging each front proprietor with three-fourths of the cost of the said improvement in front of his lot, which said certificate shall be made payable in favor of the contractor, who should do said work, as hereinafter provided, and which said certificates shall bear interest at the rate of six per cent. per annum from date until paid.

"Section 5. Be it further ordained, That no bid shall be received from any contractor for paving of said avenue as herein provided, unless he shall consent in his bid to receive the certificates, so ordered above, to be prepared by the City Engineer and Commissioner of Public Works, for such proportion of the price, as said certificates shall bear to the cost of the whole work. In other words, while the city contracts with the contractor to do this work at the whole expense of the city, the said contractor is to consent to take in part payment of the price of said contract, the certificates of assessment hereby levied against the property holders fronting on said street, to the amount and extent of said certificates. Similar certificates are to be prepared against the city for the cost of intersections and the other quarter of the pavement in front of private property, but the same are not to be recorded.

"Section 6. Be it further ordained, etc, That said certificates shall be due and demandable in favor of said contractor as soon as the same are issued as above provided, and any contractor to whom this contract is adjudicated is hereby specially subrogated to all rights, privileges, liens, claims, and demands of the City of New Orleans, in and unto the local assessments herein made upon the properties fronting on said street, and in and to the certificates aforesaid, with full power and authority to sue on said certificates or on the said local assessment in his own name, or in the name of the City of New Orleans.

"Adopted by the Council of the City of New Orleans, January 28, 1896.

"DAN A. ROSE,
"Clerk of Council.

"Approved January 30, 1896.
"A true copy:

"JOHN FITZPATRICK,
"Mayor.

"CLARK STEEN,
"Secretary to the Mayor."

OPINION.

Plaintiff, in his brief, recognizes that under the law "a contract signed by the Mayor is *prima facie* proof of due observance of all antecedent forms and requirements of law." Referring to his claims "that no notice of intention to pave Hagan avenue from Canal to Esplanade street was published in the official journal, once a week for four weeks, and that the pretended ordinance was not passed by a two-thirds vote, of the Council," counsel declare they abandon the same.

There can be no question, and in fact it is conceded, that by Act No. 119 of 1886, and by that Act as amended by Act No. 142, of 1894, the Council of the City of New Orleans was authorized "in its discretion to provide for the paving or banqueting of any street or portion thereof, at the expense of the whole city, and to thereupon force, impose and collect of the front proprietors of lots fronting on said street, a special assessment in proportion to frontage of three-quarters of the cost of said improvement," and that by said acts it was enacted that such local assessment should have a first privilege, superior to vendor's privilege and all other privileges and mortgages.

The constitutionality of those acts is not attacked directly, but the exercise by the city of authority, under the powers so granted, is called in question as being illegal, and unconstitutional.

Of the issues presented for decision by appellant, some are not properly before us for consideration on this appeal. He attacks the legality and constitutionality of the ordinance on the ground that, unless his property was benefited by the work, he cannot legally be made to pay for the paving. It is not claimed that the paving of Hagan avenue, taken as a whole, was not a beneficial public improvement, nor that as a whole it was not of special local benefit to the owners generally of property fronting on the street. The mere fact that by carrying out such a public improvement, having in view the general good locally, and so resulting that some particular piece of property along the line of work might not be benefited, would not justify the owner of that particular property in preventing the execution of the work, nor warrant him in resisting the enforcement of the ordinance by which it was directed to be done, by pleading its unconstitutionality. It certainly cannot be properly contended that the owner of a few feet of low or swamp land abutting on a public street can hold in check a work of special local benefit, and also general public benefit, by interposing as a constitutional bar that his individual property would not be benefited. If every individual citizen could raise such a separate issue and have the constitutionality or legality of the ordinance tested or measured by the special effect of such ordinance on his own property, there would be no such thing as public progress. The special interest of a particular citizen would have to yield to the general good.

It is too late to question the right of the General Assembly to establish particular districts for the attainment of special local public good, through works of a particular character, and to order itself or authorize some political body to order, special assessments to be made, within the district, for the purpose of meeting the cost and expenses of such works. George vs. Sheriff, 45 Ann. 1232). The work is done for the benefit of the local public; the assessment for its payment is levied upon the abutting lots, not because of any special benefit their owners derive from the improvement, but because this local public good demands it, and the law authorizes special taxation for such purpose. (Sec Morrison vs. Hershire, 32 Iowa, 271-276). It is true that in some instances almost the whole benefit accrues to a few, but there can be no universal rule of justice upon which such assessments can be made. An apportionment of the cost that would be just in one case, would

be oppressive in another. For this reason, the power to determine when a special assessment shall be made, and on what basis it shall be apportioned, rests in the legislature or some political body to which it has delegated that authority.

Referring to the subject, Cooley in his work on Taxation, page 429, says "the matter is wisely confided to the legislature and could not, without the introduction of some new principle in representative government, be placed elsewhere. With the wisdom or unwisdom of special assessments when ordered in cases in which they are admissible, the courts have no concern, unless there is plainly and manifestly such an abuse of power as takes the case beyond the just limits of legislative discretion."

The subject of taxing districts, says Cooley (page 449), "belongs to the legislature—so much is unquestionable. The authority may be exercised directly, or in the case of local taxes it may be left to local boards or bodies, but in the latter case the determination will be by a body possessing for the purpose legislative power, and whose action must be as conclusive as if taken by the legislature itself. It has been repeatedly decided that the legislative act of assessing districts for special taxation on the basis of benefits, cannot be attacked on the ground of error of judgment regarding the special benefits, and defeated by satisfying a court that no special and peculiar benefits are received. If the legislature has fixed the district and laid the tax for the reasons that in the opinion of the legislative body such district is peculiarly benefited, that is conclusive, and so, when the legislature *has adopted its method and standard of distributing the cost as constituting in its judgment an apportionment in proportion to the benefits as nearly as is reasonably practicable,* the judiciary should not be called on to interfere." In many instances, says Cooley (p. 451), "where streets are to be opened or improved, the benefits of which might be expected to diffuse themselves along the line of the improvement in a degree bearing some proportion to the frontage, the legislature has deemed it right and proper to take the line of frontage as the most practicable and reasonable method of possible benefits, and making that the standard to apportion the benefits accordingly. Such a method of apportionment seems at first blush to be perfectly arbitrary, and likely to operate in some cases with great injustice, but it cannot be denied that in the case of some improvements frontage is a very reasonable measure of benefits, much more than value can be, and perhaps ap-

proaching equality as nearly as any estimate of benefits made by the judgment of men. However this may be, the authorities are well united in the conclusion that frontage may be lawfully made the basis of apportionment. Occasional hardships must inevitably result from the adoption of such a basis, but the question is fairly debatable, whether they are likely to be more serious or more frequent than those which are to be anticipated from the selection of some other rule."

Appellant relies very greatly upon the decision of the Supreme Court of the United States in Village of Norwood vs. Baker (172 United States 269), but that case was decided upon an entirely different state of facts. Appellant's property is not sought to be taken from him by the city in the exercise of the power of eminent domain. The city has simply exercised its unquestionable right and power of paving an existing public street in the interest of the special local public benefit, and demanded of owners of property abutting and fronting on the street that they contribute to the cost of the improvement in a manner and form, and to an extent fixed by the General Assembly. The object of the paving of the street was to benefit parties owning property upon it by the improvement of the access to their properties. It is not pretended that this particular purpose was not accomplished even as to appellant's property. It cannot be exacted for the purpose of sustaining the constutionality of a statute or ordinance authorizing a work of local public improvement at the cost of abutting owners, that it be shown there is benefit in every possible respect to the particular owners, nor that the benefit be direct and immediate (Lent vs. Tillson, 72 Cal. 428; 14 Pac. 71; George vs. Sheriff, 45 Ann. 1232.)

This whole subject has been recently examined in Hadley vs. Dague, 62 Pac. 505, and the case of the "Village of Norwood vs. Baker," referred to and discussed.

The General Assembly has, in Act No. 119 of 1886, conferred upon the Common Council the right and power by a two-thirds vote to constitute any particular street which it proposes to pave, a special taxing district for the purpose of meeting the cost of making such paving. It has exercised this right and power in the matter of the paving of Hagan avenue. Having done so, the legislature itself has designated how, in what proportion and by what standard this cost is to be met. The Council was not at liberty to depart from this apportionment. The judiciary is not authorized to alter it and to substitute for a fixed legislative standard, a fluctuating judicial standard based upon actual

benefits received and measured by values or enhanced values to be established by evidence and proof.

Appellant claims that "if the ordinance has provided an illegal method of computing the cost to the property owner, the Council can not change it and institute another way to enable the contractor to collect. The ordinance is null and void. He can have no cause of action."

We have held in Barber Asphalt Paving Company vs. John Watt, 51 Ann. 1145, and Moody & Company vs. Chadwick 52 Ann., 1888, that where the property owner or his property is sought to be made liable for a proportion of cost other than that fixed by law, he is entitled to protection, but where he is sought to be charged only to the extent which the law directs him to be charged, he has no ground of complaint.

The parties to the contract in this case were the City of New Orleans and A. J. Christopher. The work done has, as between the contracting parties, been accepted as having been executed to the city's satisfaction, entitling the contractor to payment. If, from any unavoidable cause the work has not been extended out as far as it was contemplated it should be, the property owners cannot complain unless a proper reduction of cost has not been made and their contributing shares been correspondingly brought down, or the object had in view by the improvement had suffered from the fact. There is no claim of this kind alleged or shown. In Cooley on Taxation, page 468, it is said: "It is no defense to an assessment that the contract for the work was not performed according to its terms. The proper authorities must decide upon this, and if they accept the work the acceptance, in the absence of fraud, is conclusive. And even fraud, it would seem, could not be accepted as a defense to the assessment, but must be determined in some direct proceeding instituted for the purpose." It was decided in Nolan vs. Peese 32 Cal. 484, that fraud in letting the contract was no defense to the assessment. It might doubtless be a reason for enjoining the execution of a contract on a bill filed in due season.

Appellant overlooks the fact that the basis of contribution as between the city and the property owners affects the question of payment under the contract, not the contract itself.

The contractor cannot receive any greater payment from the property owners under the certificates than the law authorizes the property owners or their property to be charged with, but the fact that more

was sought of them than the law authorizes does not cause him to forfeit what he is really entitled to. If the proportion of contribution was made on a wrong basis the abutting owners had the right simply to insist that the proper basis to be adopted and the legal proportion be established on that basis. The judgment, as it reads, decrees a general personal judgment against the defendant in favor of the plaintiff to its fullest extent.

We do not understand that such was the intention of the court below. It doubtless adopted the phraseology it used as a convenient method of describing the extent of plaintiff's rights, assuming that the extent to which the judgment could be executed would be controlled by the application to it of the legal principles, governing claims of this particular character. In affirming the judgment appealed from we think it proper to say that as to scope and in its enforcement it must be governed by the principles announced in the case of the Barber Asphalt Paving Company vs. John Watt, reported in 51 Ann. 1888.[1]

As so construed, the judgment appealed from is affirmed.

Rehearing refused.