247 So.2d 889 (1971)
Maybelle M. OLSEN and Sharon M. Mitchell
v.
The CITY OF BATON ROUGE et al.
No. 8433.
Court of Appeal of Louisiana, First Circuit.
April 19, 1971.
Rehearing Denied May 31, 1971.
*890 Tom F. Phillips, of Taylor, Porter, Brooks & Phillips, Baton Rouge, for appellants.
Joseph F. Keogh, City-Parish Atty., and Ed W. Fetzer, Asst. Parish Atty., Baton Rouge, for appellees.
Before LANDRY, ELLIS and BLANCHE, JJ.
BLANCHE, Judge.
Plaintiffs instituted this suit against the City of Baton Rouge and its Mayor seeking to enjoin the City from proceeding further with its plan to acquire land for the purpose of constructing thereon a garbage transfer facility. Plaintiffs allege that they are the owners of the property located within the city limits of Baton Rouge on which is located the Alamo Plaza Motel. Plaintiffs further allege that the proposed site of the garbage transfer facility is on the adjacent tract of land lying north of plaintiffs' motel. Plaintiffs base their action for injunctive relief on three grounds: (1) violation of existing zoning ordinances in that the garbage transfer facility is to be located on land presently zoned "M-1," and the garbage *891 transfer facility cannot be operated as a permissive additional industrial use under that zoning classification without exceeding the prescribed seventy decibel noise limitation; (2) abatement of a public or private nuisance in that the proposed garbage transfer facility will either create a nuisance per se or a public or private nuisance in fact; and (3) arbitrariness on the part of the City in selecting this particular site, thus constituting illegal governmental action.
A rule was issued against the defendants directing them to show cause why a preliminary injunction should not issue. At the trial on this rule extensive evidence was offered by the litigants and the case was taken under advisement. In due course judgment was rendered in favor of defendants denying plaintiffs a preliminary or permanent injunction and dismissing plaintiffs' suit. From this judgment plaintiffs devolutively appealed. For the reasons set forth herein, we affirm the trial court's denial of a preliminary injunction.
The trial court gave written findings of fact and reasons for judgment, pertinent excerpts from which are reproduced below:
"By resolution adopted on July 22, 1970, the City Council of The City of Baton Rouge authorized the appropriation of $420,000.00 for the purpose of acquiring a tract of land containing approximately 9.76 acres located on the square bounded by North Street on the north, North Beck Street on the east, the property of plaintiff on the south, and a residential subdivision on the west, upon which the refuse transfer station and a central garage will be constructed. The location had been selected by previous Council action and the owners of the site have offered to sell the property to the City for a negotiated price of $361,983.34.
"Mr. Ray Burgess, the Director of the Department of Public Works of The City of Baton Rouge, and under whose jurisdiction this project would be carried out, testified that the City proposes to construct a garbage transfer facility and a central garage on the trzct [sic] to be acquired. General plans for the garbage transfer facility have already been prepared by a consulting engineer employed by the City and, according to the testimony of both Mr. Burgess and Mr. Lank Corsentino, a member of the City Council who chaired a committee which made an investigation of the garbage operations, the facility to be constructed would be patterned after one which exists in Lancaster, Pennsylvania, photographs of which were offered in evidence.
"The name of the installation fairly indicates its purpose. Garbage collected by the City's collection trucks, commercial haulers and individuals will be dumped into hoppers at the station, where the material will then be compressed and, in the compressed form, transferred to large van-type trucks for transportation and disposal at a sanitary fill maintained by the City to the north of the city limits. The economic justification for the operation of such a facility is based upon the savings realized by bulk hauling of compressed garbage.
"The facility itself will be a two-level structure with an open unloading dock on the second level and a loading ramp for the large van-type trucks on the lower level. The building will contain the hydraulic compressor-hoppers and the unloading dock will be sufficiently large to accommodate six to eight large garbage dumpster trucks at the same time. In addition, there will be an outside hopper of some type available for dumping of non-compressible objects such as abandoned refrigerators, automobile fenders and other large metal items.
"Mr. Burgess and Mr. Corsentino both testified that the transfer station would be available for use by commercial haulers, private individuals, public institutions, such as Louisiana State University, as well as the City-owned garbage *892 and trash trucks. It is the intention of the City to operate the transfer station in a proprietary manner and to attempt to make it self-sustaining through the collection of fees from all vehicles which bring garbage to the facility other than those owned and operated by the City.
"Mr. Burgess estimated that 300 to 500 vehicles would come into the garbage dock each day, or about one vehicle every two to three minutes during a 12-hour day. The transfer station will be operated on a 12-hour basis five days a week from 8:00 A.M. to 7:00 P.M., and would not be open during the night hours except as may be necessary to service garbage dumpster trucks which make scheduled pickups from public schools during the school year.
"The officials of the City involved in the project testified that the transfer facility itself could be constructed and maintained on a smaller parcel of land, however, it was considered economically advantageous to locate the central garage on the same site, thereby making the transfer station the over-night parking and maintenance base for the garbage trucks and the maintenance facility for all of the City's vehicles. Mr. Burgess testified that this would mean that all of the drivers and workmen of the refuse department would report to this property at 6:00 A.M., the beginning of their work day, and depart from the lot in convoy at approximately 6:20 A.M. The witnesses agreed that the total operation would utilize all of the area of the tract in question.
"The Alamo Plaza Motor Hotel owned by the plaintiffs is an attractive and profitable motel operation. It fronts on Florida Street, the most heavily travelled east-west thorougfare in the City of Baton Rouge and bisects a densely commercial section of Baton Rouge. The motel property abuts on the tract proposed to be acquired by the City and many of the room units are situated along the property line. The property occupied by the motel is zoned C-2, a more restrictive zoning classification than the M-1 zoning which applies to the property which the City plans to acquire and utilize for the garbage transfer facility.
"The application for injunctive relief is based upon three separate causes, namely:
"(1) M-1 zoning which the property presently possesses will not permit the intended use and petitioner as a neighboring property owner will suffer special injury.
"(2) The operation of the facility, irrespective of applicable zoning ordinance will constitute a public and private nuisance.
"(3) The City was arbitrary and unreasonable in the selection of this site for this facility in that it failed to give any consideration to the effect on environmental conditions in the area and the rights and sensibilities of adjoining property owners, and made no reasonable effort to offer preferred alternate sites.
"This Court rules that the plaintiffs have failed to show that the action of the defendants herein was unreasonable or arbitrary in the selection of the particular site in question. On the contrary, the evidence is abundant that the defendants' actions were taken after careful consideration, study and hearings and was [sic] based on reasonable grounds. This is not to conclude that the Court necessarily believes that the governing authorities made the wisest choice. The Court is not permitted to substitute its opinion or judgment for that of the legislative branch of government.

*893 "The evidence produced by the plaintiffs as to whether the proposed action of the City would constitute a zoning violation indicates that at times the noise to be created from the facility may exceed the noise level permitted by the zoning ordinance, but does not establish that the proposed facility and use thereof necessarily would violate the zoning ordinance in any other manner. It was pointed out by the defendants that the issue of possible violation of the zoning ordinance would only come up when an application for a building permit for the facility was submitted and that the City has the authority to change the zoning standards and the type of zoning in the area contemplated. The Court, therefore, feels that the claims of the plaintiffs in regards to a possible zoning violation are without merit.
"The real issue, therefore, in this case is whether or not the use to which this project will be put is such that the plaintiffs are entitled to the relief they prayed for; in other words, would the operation of the facility constitute a public and private nuisance. This Court is not prepared to hold that a garbage transfer station is a nuisance per se. The City concedes that it cannot assure the Court that the facility will not be a nuisance after it is in operation. The law as the Court understands it provides that neither a private citizen or a public body may create or maintain a nuisance.
"The Court, as a practical matter, is convinced in its own mind that a garbage transfer station with its smell, noise and traffic will create some discomfort, disagreeable odors and inconvenience, and perhaps some aesthetic objectionableness, to property owners in the immediate vicinity in some degree no matter where the facility might be located in today's urban society.
"The evidence produced by the plaintiffs suggests that the proposed operation of this proposed facility, once actually begun, could or may constitute a nuisance. However, the evidence does not clearly establish, in this Court's mind, that the proposed operation, once begun, will in fact be a public nuisance that could be abated." (Written Reasons for Judgment, Record, pp. 36-41)
Plaintiffs assign as their first specification of error the failure of the trial court to grant injunctive relief despite the trial court's allegedly finding as a matter of fact that the proposed use of the property by defendants would constitute a violation of the applicable zoning ordinances. From our review of the entire record as well as applicable jurisprudence, we are satisfied that this specification of error is without merit. At the outset it is important to bear in mind that plaintiffs are seeking to enjoin the construction of a proposed facility for which no final plans have even yet been prepared on the basis of anticipatory alleged violation of the zoning ordinances as they were in existence at the time of the trial. The evidence shows that the City possesses the right on its own motion to amend the zoning ordinances, and to base the granting of injunctive relief on the ground that the proposed facility, once constructed and placed in operation, will violate then existing zoning restrictions, requires resort to conjecture and speculation. Injunctive relief should not be granted unless facts supporting its justification are clear and convincing, and rules governing the use of injunctive process are strictly construed, Ritchey v. Lake Charles Dredging & Towing Company, 230 So.2d 346 (La.App. 3rd Cir. 1970), writ refused, 255 La. 816, 233 So.2d 252. Plaintiffs clearly bear the burden of proving their right to injunctive relief, and we are satisfied that plaintiffs have failed to prove that the proposed garbage transfer facility, once constructed and placed in operation, will be in violation of then existing zoning *894 restrictions. Simply stated, plaintiffs' contentions in this regard are premature.
Plaintiffs' next specification of error is the failure of the trial court to find the proposed garbage transfer facility to constitute a nuisance which should be abated. Once again, plaintiffs' contentions in this regard are premature, for plaintiffs seek an injunction of an anticipatory nuisance.
Plaintiffs contend that the proposed garbage transfer facility constitutes a "nuisance per se" rather than a "nuisance in fact." The trial court declined to classify the proposed garbage transfer facility as a nuisance per se. This determination was correct inasmuch as the proposed facility under the facts cannot be classified as one which will be a nuisance at all times and under any circumstances regardless of its location or surroundings, such as a bawdy house operated in violation of the law, see Ritchey v. Lake Charles Dredging and Towing Company, cited supra.
Plaintiffs contend that the proposed facility will, once constructed and placed in operation, constitute a nuisance in fact. The trial court properly held that plaintiffs failed to bear the burden of proof incumbent upon them to obtain injunctive relief for an anticipatory nuisance in fact. In Le Bourgeois v. City of New Orleans, 145 La. 274, 82 So. 268 (1919), suit was brought against the City of New Orleans to enjoin the City from constructing a tuberculosis hospital, the contention being made that the proposed construction would constitute a menace to the health of the people living in the vicinity. The Louisiana Supreme Court denied the request for injunction holding that the suit was groundless insofar as it was sought to be founded on the apprehended injurious character of the proposed hospital, the Court commenting that there was a presumption that the hospital would be well kept and maintained.
The general rule is that courts will not grant injunctions of anticipatory nuisances, the reasoning being that such relief is premature and the complaining party has available the possibility of obtaining injunctive relief if the facility once constructed and in operation is proven to be a nuisance in fact.[1]
The cases cited by plaintiffs in this regard all involve situations where the facility complained of was already in existence and was either being operated or maintained in such a fashion or manner as to be susceptible of proof of constituting a nuisance. See, for example, Ragusa v. American Metal Works, 97 So.2d 683 (La. App.Orl. Cir. 1957); Ryan v. Louisiana Society for Prevention of Cruelty to Animals, 62 So.2d 296 (La.App.Orl. Cir. 1953).
The trial court correctly held that plaintiffs failed to prove the existence of any anticipatory nuisance in fact resulting from the proposed construction.
The third specification of error assigned by plaintiffs is the failure of the trial court to find that the governing authority of the City of Baton Rouge was arbitrary in selecting the proposed site for construction of the garbage transfer facility. This specification of error is likewise without merit. The trial court found as a fact instead that the site was selected after careful consideration, study and hearings and the selection was based on reasonable grounds.
*895 There is a presumption that the municipal legislative act is valid, and the burden of proving the contrary is on him who asserts invalidity or nullity. A court may not interfere with legislative discretion or substitute its judgment for that of the legislative body except where the legislative action is so clearly arbitrary and capricious as to be unreasonable. A presumption exists that the actions of the legislative body were not arbitrary or capricious, and in order for a court to find to the contrary, it must be shown that there was no room for difference of opinion and that there was no substantial evidence on which the legislative action could have been taken, see Hunter v. City of Shreveport, 216 So.2d 140 (La.App. 2nd Cir. 1968), writ refused, 253 La. 323, 217 So.2d 414.
As stated by the Louisiana Supreme Court in Gibson v. City of Baton Rouge, 161 La. 637, 109 So. 339 (1926):
"We think that selecting the site on which a public necessity, or public work of any sort, should be located, is essentially a legislative and not a judicial function. The very nature of the determination to be arrived at marks it as such; for it requires the exercise of much discretion, of a nature which a court would not be competent to exercise; involving an inquiry into, and consideration of, all the surrounding circumstances and the necessity perhaps of making the final selection wholly on its own initiative and regardless of the suggestions of those appearing before it. It is manifest also that such discretion can no more be controlled by the courts than exercised in the first instance." (Gibson v. City of Baton Rouge, 161 La. 637, 109 So. 339, 340)
The record fails to establish arbitrary legislative action on the part of the governing authority of the City of Baton Rouge, and, on the contrary, as found by the trial court, substantiates that the determination of the proposed location for the garbage transfer facility was the product of significant deliberation and expert advice and consultation. (Record, pp. 352, 353, 424-432)
Appellants assign as their last specification of error the dismissal of their suit on a hearing on a rule for preliminary injunction, citing as authority for error committed by the trial court in this regard the case of Baton Rouge Cigarette Service v. Bloomenstiel, 88 So.2d 742 (La.App. 1st Cir. 1956).
Our review of the record indicates that this point is well taken and that inasmuch as the record fails to contain a stipulation to the effect that the trial on the rule for preliminary injunction would also constitute trial on the merits for permanent injunctive relief, dismissal of the suit in its entirety without a hearing on the merits was improper. As stated by the Fourth Circuit Court of Appeal in Pizzitola v. Pace, 161 So.2d 441 (La.App. 4th Cir. 1964), there is nothing in the Louisiana Code of Civil Procedure to indicate abrogation of the principle of law enunciated in Baton Rouge Cigarette Service v. Bloomenstiel, cited supra, with the result that the trial court cannot, absent a stipulation, dismiss a suit on the merits prior to a trial on the merits for a permanent injunction when the trial court denies the preliminary injunction.
For the foregoing reasons, the judgment appealed from is affirmed in all respects except insofar as the judgment dismisses plaintiffs' suit without a hearing on the merits. In that respect, it is reversed and remanded for further proceedings. All costs of this appeal, however, are assessed to appellants.
Affirmed in part, reversed in part and remanded.
NOTES
[1] See Annotation: Sewage Disposal Plant as Nuisance, 40 A.L.R.2d 1177, 1192:

"§ 8. Anticipatory Nuisance.
"Injunctive relief against the proposed construction and operation of a sewage disposal plant, upon the ground that such plant will constitute a nuisance per se, does not appear warranted from the view taken by most of the courts which have discussed the question. In denying anticipatory relief the courts have noted the possibility that, either by improper construction or operation, the disposal plant might in fact become a nuisance, in which case equitable remedies would then be available."