STOKER, Judge.
This is action by eight individuals who are owners and developers of Belle Terre Subdivision located in Iberia Parish, Louisiana.[1] Plaintiffs sued Sewerage District No. 1 of Iberia Parish, Louisiana, (Sewerage District) for a monetary judgment in the amount of $67,762.96 and also for declaratory relief. The Iberia Parish Police Jury was also a defendant but insofar as we can determine is not before us on appeal.[2]
Plaintiffs’ petition sets forth an extensive history and several complaints. In essence we may summarize the complaint as an attack on a local or special assessment tax levied by the Sewerage District on lots in Belle Terre Subdivision, a claim for monetary reimbursement, and a demand for a declaratory judgment decreeing that certain temporary treatment plant facilities should eventually become plaintiffs’ property.[3] The court dismissed plaintiffs’ mone *1251 tary demand on exceptions and held that the demand for declaratory relief did not present a justicable controversy. Plaintiffs’ demands were rejected by the trial court and plaintiffs now appeal.
FACTS
Plaintiffs joined with six other subdivision owners to participate in a special assessment program by the Sewerage District to serve all the areas. The Sewerage District adopted a resolution on May 31, 1979, to authorize construction of a sewerage system in the several subdivisions to be financed by an assessment of the property in the subdivisions. On August 9, 1979, the Sewerage District accepted a bid for construction of the system through a resolution. The resolution provided for payment of the cost through the levy and collection of local or special assessment on each lot or parcel of ground to be served in the subdivision and for the issuance and sale of sewerage certificates. On September 13, 1979, the Sewerage District levied a special assessment tax on each lot in the subdivisions. The special assessment ordinance was published in the official journal of Iberia Parish on September 19, 1979. Plaintiffs filed their suit on October 28, 1980.
The monetary recovery portion of plaintiff-appellants’ demand totaling $67,762.96 covers three separate items of damage. First, petitioners allege they were informed that their portion of the projected costs of the sewerage system pertaining to the mechanical treatment plants would be $46,-800.00 but they were assessed for $64,-759.24. In round figures this difference amounts to $17,960.00 (the actual difference being $17,959.24). Second, petitioners allege that they suggested a scheme for using gravity flow to reduce costs for the system serving their subdivision. They further allege that the Sewerage District rejected this suggestion, resulting in a cost of $24,-802.62 over what it would have cost to follow their suggestion. Finally, petitioners allege that after levying an assessment not based on petitioners’ gravity flow plan, the District’s plan was abandoned and petitioners’ plan was adopted. Petitioners contend they were thus assessed for $24,802.62 more than they should have been. Petitioners demand reimbursement of this amount. Thirdly, petitioners allege they are entitled to $25,000.00 in damages for mental anxiety and distress caused them by the defendants’ actions. The three items of damages may be listed as follows:
Recovery of erroneous and improper assessment $17,960.00
Recovery of savings in costs in using gravity flow system 24,802.96
Recovery for mental anguish and distress 25,000.00
$67,762.96
The defendants filed exceptions of prescription, prematurity, no cause of action and a plea of estoppel.
VALIDITY OF THE SEWERAGE SYSTEM ACTION
Plaintiffs articulated extensive complaints in their petition setting forth alleged improper modes for arriving at the assessments. However, plaintiffs do not charge that the Sewerage District failed to follow statutory requirements for levying of the special assessment. The statutory provisions for establishing sewerage districts and their powers, insofar as they are pertinent to this case, are contained in LSA-R.S. 33:3981 through 3996. Plaintiff-appellants concede in their brief that their petition was not timely filed under LSA-R.S. 33:3994 which provides as follows:
§ 3994. Prescriptive period to question validity of proceedings
“No contest or proceeding to question the validity or legality of any resolutions or ordinances adopted or proceedings had under the provisions of this Sub-part *1252 shall be begun in any court by any person for any cause whatsoever, after the expiration of thirty days from the date when the resolution, ordinance or proceeding was published, and after such time the regularity of such resolution, ordinance or proceeding shall be conclusively presumed. If the validity of any certificates issued under the provisions of this Sub-part is not raised within thirty days from date of publication of the resolution or ordinance issuing said certificates and fixing their terms, the authority to issue said certificates, the legality thereof and of the local or special assessments necessary to pay the same shall be conclusively presumed and no court shall thereafter have authority to inquire into such matters. Added Acts 1950, No. 462, § 14, as amended Acts 1958, No. 395, § 8.”
Plaintiff-appellants concede that since they did not file their action within the thirty days provided by Section 3994 quoted above, they may not attack the validity or legality of the resolutions and ordinances of the Sewerage District which resulted in the levy of the special assessment on their property. The trial court concluded that the defendants’ exception of prescription was good under the above quoted Section 3994 of Title 33 of the Louisiana Revised Statutes and under Charles v. Sewerage District No. 2 of St. Charles Parish, 256 La. 953, 240 So.2d 719 (1970). This holding appears to us to be correct, and, as noted, appellants do not complain of this ruling. Instead, appellants shift their attack to other grounds.
DO APPELLANTS HAVE RIGHTS UNDER LSA-R.S. 47:2110?
Although they make the concession as to prescription or peremption, appellants assert that their petition states a cause of action under LSA-R.S. 47:2110. This statute prohibits courts of this state from restraining the collection of any tax by the state or any of its political subdivisions. This statute does provide for some relief, however, as it makes provision for payment of the tax under protest to be followed by a suit for recovery of the tax paid. Appellants urge in their brief that their petition is broad enough to fit under this statute but that if their suit does not set forth an action for recovery of any sum paid by them under the assessment in question, they should be allowed to amend their petition to allege such an action. Appellants also raise constitutional questions which we do not reach.
The provisions of LSA-R.S. 47:2110 are as follows:
§ 2110. Suits to recover taxes paid under protest
“A. No court of this state shall issue any process whatsoever to restrain the collection of an ad valorem tax imposed by the state, or by any political subdivision thereof, under authority granted to it by the legislature or by the constitution. Any person resisting the payment of any amount of tax found due, or the enforcement of any provision of the tax laws in relation thereto, shall pay the amount found due to the officer designated by law for the collection of such tax and shall give the officer notice at the time of payment of his intention to file suit for the recovery of such tax. Upon receipt of such notice, the amount so paid shall be segregated and held by the officer for a period of thirty days. If suit is filed within such time for the recovery of the tax, such amount so segregated shall be further held pending the outcome of the suit. If the taxpayer prevails, the officer shall refund the amount to the taxpayer with interest at the rate of two per cen-tum per annum for the period from the date such funds were received by the officer to the date of such refund.
“B. The right to sue for recovery of a tax paid under protest as provided herein shall afford a legal remedy and right of action in any state or federal court having jurisdiction of the parties and subject matter for a full and complete adjudication of any and all questions arising in the enforcement of such right respecting the legality of any tax accrued or accruing or the method of enforcement thereof. In any such suit, service of process upon the officer designated by law for *1253 the collection of the tax shall be sufficient service, and he shall be the sole necessary and proper party defendant in any such suit.
“C. The right to sue for recovery of a tax paid under protest as provided herein shall afford a legal remedy and right of action at law in the state .or federal courts where any tax or the collection thereof is claimed to be an unlawful burden upon interstate commerce, in violation of any act of the Congress of the United States, the Constitution of the United States, or the constitution of the state, or in the federal courts in any case where jurisdiction is vested in any of the courts of the United States. Upon request of a taxpayer and upon proper showing by such taxpayer that the principle of law involved in an additional assessment is already pending before the courts for judicial determination, the taxpayer, upon agreement to abide by the pending decision of the courts, may pay the additional assessment under protest but need not file an additional suit. In such cases the tax so paid under protest shall be segregated and held by the officer designated by law for the collection of such tax until the question of law involved has been determined by the courts and shall then be disposed of as herein provided.
“D. The right of action provided in this section shall be in addition to any rights elsewhere provided in this Sub-title, including R.S. 47:1998, affording taxpayers an opportunity to test the legality or correctness of their assessments or ad valo-rem taxes paid under protest before the courts of state.
“E. Any taxpayer in the state who has paid his taxes under protest as provided in Subsection A above, and who has filed suit under the provisions of R.S. 47:1856, R.S. 47:1857, or R.S. 47:1998, shall cause to issue in said suit notice to the officer or officers designated for the collection of said taxes in the parish or parishes where the property is located, and such notice shall be sufficient to cause said officer or officers to further hold said amount segregated pending the outcome of the suit. Amended by Acts 1970, No. 375, § 1; Acts 1980, No. 601, § 2, eff. July 23, 1980.”
Plaintiff-appellants rely on Charles v. Sewerage District No. 2 of St. Charles Parish, supra, as holding that, despite peremption of their right to attack the validity and legality vel non on the ordinance in question, they may nevertheless proceed under LSA-R.S. 47:2110 in an action for recovery of any assessment paid under protest although the basis for the recovery is a claim of invalidity or illegality of the assessment ordinance. Irrespective of the merit of this position and what Charles may hold in this regard, a decision we do not reach, we are of the opinion that the petition filed by plaintiff-appellants fails to state a cause of action for the recovery of a money judgment.
DO APPELLANTS HAVE A CAUSE OF ACTION FOR REFUND OF $17,960 ALLEGEDLY IMPROPERLY AND ERRONEOUSLY ASSESSED TO THEM?
In reading those allegations of the petition on which plaintiff-appellants base their claim for recovery of $17,960.00, we are of the opinion that the allegations fail to set forth sufficient facts on which a timely filed attack under LSA-R.S. 33:3994 could be made, much less a claim for recovery on the same grounds. Although the allegations are extensive and detailed, they simply do not charge the Sewerage District with any failure to comply with any legal requirements for enactment of the assessment ordinance.
The record in the case before us indicates that plaintiff-appellants were fully aware at the time the sewerage assessment ordinance was adopted and published of what it contained. They were also aware of the alteration in the provisions of the ordinance which affected the amount of the assessment relative to appellants’ property so that the ordinance did not reflect what appellants had previously understood would be the amount for which they would be *1254 assessed. The pertinent allegations on this particular issue are contained in paragraphs I through XIII. In essence all plaintiff-appellants allege in these paragraphs is that the final assessment pertaining to the mechanical treatment plants was altered to correct a clerical transpositional error. There is no allegation that the Sewerage District failed in any way to comply with the statutory requirements for the assessment. No allegation is made that the assessment is unfair or inequitable.
In our opinion the decision made by the Sewerage District was a legislative decision within its discretion as a political subdivision not subject to judicial review. The Supreme Court recently made pronouncements on this general subject in Landry v. Parish of East Baton Rouge, 352 So.2d 656 (La.1977). The facts were not closely analogous to those of this case but the pronouncement we refer to is no less pertinent. The Landry case involved a street pavement improvement statute. The petitioners in that suit sought to have their properties stricken from an ordinance assessing their properties on a front foot basis to defray the cost of the improvements. One of the property owner-plaintiff’s complaints was that the parish governing authority had not complied with a statutory requirement that it “make a determination as to whether each lot or parcel of real estate to be assessed will be benefited to an amount not less than the proposed local or special assessment.” The Supreme Court determined that the governing authority, the Parish Council, had complied with the statute. The Supreme Court then concluded that it could not consider the correctness or merits of the determination made. It held it could not review this question as it was a legislative determination not subject to judicial review. The Supreme Court’s comments were as follows:
“The merit of the council’s benefits determination is, of course, a different matter. Was the council correct in its determination? Was that determination the exercise of a legislative or a judicial function? And is that determination reviewable in court?
“We believe that the benefits determination, statutorily required of the municipal legislative body, is a legislative act, with admittedly quasi-judicial overtones, and that while it is not totally unreviewa-ble, courts may not upset the determination absent such manifest and palpable abuse of power such that excess of the limits of legislative discretion is evident.[1]
“As was noted by the First Circuit Court of Appeal in Olsen v. City of Baton Rouge, 247 So.2d 889 (La.1971), writs refused 259 La. 755, 252 So.2d 454, municipal legislative acts are presumed to be valid and the burden rests with the party who asserts the contrary. A court may not interfere with this legislative function unless it is clearly shown that the legislative body’s action is so clearly arbitrary and capricious as to be unreasonable. Nor is the municipal legislative body constrained (by the provisions of R.S. 33:3301 et seq. or otherwise) by the procedural rules relative to evidence and the like normally attendant to judicial proceedings. In the case at hand, while the evidence presented in the district court may arguably have been short of a preponderance that plaintiffs’ properties would be benefited to an amount not less than the proposed assessments, we are unable to conclude that the Parish Council for the Parish of East Baton Rouge exceeded its legislative discretion in determining that the abutting properties were to be benefited in the requisite amount.”
See also Pleasant v. City of Shreveport, 179 So.2d 911 (La.App.2nd Cir. 1965).
As we noted above, the petition does not allege that the assessment levied on plain *1255 tiff-appellants’ property is unfair or inequitable. The allegations do not suggest that the assessment is arbitrary or capricious so as to be unreasonable. Therefore, no constitutional questions are raised by the pleading.- We realize that plaintiff-appellants do not seek to avoid liability for any tax assessment at all; they merely want to pay a lesser amount which they contend was what they were given to understand would be their assessment share. In order to bring them within what they agree they should pay, they ask for a money judgment against the Sewerage District for $17,-690.00.
For the reasons we have given, we hold that plaintiff-appellants have failed to state a cause of action for a money judgment in this amount.
APPELLANTS’ CLAIM FOR $24,802.96
What we have said immediately above relates only to the portion of the monetary demand for $17,960.00 allegedly resulting from an erroneous and improper assessment. As to the other two items we think the petition fails to state causes of action. With reference to the savings of $24,802.96 alleged to have resulted from switching to the gravity flow system, we cannot think of any basis on which appellants as private owners of Belle Terre Subdivision are entitled to recover any such sum. The Sewerage District is a political subdivision of the state. It may well be that appellants’ interests have not received proper treatment, but if any such savings actually result or resulted, we know of no basis on which the savings may be passed on to appellants. Accordingly, we hold appellants have no cause of action to recover the $24,802.96 portion of their monetary demand and this portion of the demand should be dismissed.
APPELLANTS’ CLAIM FOR $25,000 IN DAMAGES FOR MENTAL ANGUISH
We likewise find no cause of action to appellants’ demand for $25,000.00 in damages for mental anxiety and distress caused them by the Sewerage District. Without necessarily doubting that appellants have experienced mental anxiety and distress, we know of no right of recovery from a political body or unit of government of monetary damages resulting from frustration suffered by an individual caused by action of the governmental agency. Hence, this portion of plaintiff-appellants’ demand for recovery should also be dismissed.
ARE PLAINTIFF-APPELLANTS ENTITLED TO DECLARATORY RELIEF?
The trial court stated the facts relative to the declaratory relief demanded by appellants as follows:
“The third claim involved herein arises from the future ownership of the temporarily constructed small sewerage disposal plant for Belle Terre Subdivision. Plaintiffs seek a declaratory judgment awarding plaintiffs ownership of these facilities at the time of the tie-in to the permanent facilities. This plant was constructed to take care of temporary sewerage needs pending final connection to the permanent collection lines by the sewerage district which are to be constructed several years hence. At the present time, these lines have not yet been constructed nor have they been definitely planned at the present time. Plans are at the present time being considered by engineers. Petitioners’ claims in this regard arise out of oral representations and agreements allegedly between petitioners and agents or representatives of the defendant, according to witness, Dorsey. Petitioners allege that representatives of the Sewerage District assured them that whenever in the future the subdivision is connected to the permanent disposal lines, that defendant, Sewerage District, would give and grant unto the petitioners, as owners of Belle Terre Subdivision, the sewerage treatment facilities and plant that were constructed by the sewerage district for temporary handling of sewerage in the subdivision. The Court would point out that all of these facilities were constructed and are owned by the Sewerage District.
*1256 “To this latter claim of the petitioners, the Sewerage District filed an Exception of Prematurity and No Cause of Action.”
The trial court concluded that in order to grant the declaratory relief demanded it would be necessary to assume that all construction would go according to plan. Also in view of the possibility of unforeseen contingencies and developments which might occur, the court further concluded that it should not attempt to decide the question of ownership of the temporary facilities prior to fulfillment of all conditions. The trial court held that the petition did not present a justiciable controversy as contemplated by LSA-C.C.P. arts. 1871-1883. We are of the opinion that the trial court was correct. To decide the ownership question at this time will serve no present purpose, would require the assumption of facts and events which may not actually come to pass, and would not take into account events which may come to pass in the future which might be pertinent to an eventual decision of the question of ownership.
CONCLUSION
The trial court concluded in its reasons for judgment that defendants’ exceptions of prescription and no cause of action should be sustained. As we interpret the trial court’s reasons for judgment the three claims for money judgment were decided on the exception of prescription and the demand for declaratory relief was decided on the exception of no cause of action. We agree and affirm the dismissal. As noted above we are of the opinion that the money demands should also be dismissed for failure to state a cause of action.
All costs of the proceeds in the district court and before this court on appeal are assessed to plaintiff-appellants.
AFFIRMED.
GUIDRY and CULPEPPER, JJ., concur and assign reasons.

. The plaintiffs are Charles A. Dorsey, Sam A. Broussard, Albert A. Woodburn, Dr. Larry J. Hebert, Staples J. McClendon and John A. Hill.

. The Iberia Parish Police Jury filed exceptions along with the Sewerage District. The trial court’s reasons for judgment appear to have ruled that the Police Jury should be dismissed on an exception but the judgment in the record dismissing plaintiffs’ action lists the Sewerage District only.

. Plaintiff-appellants’ petition does not in so many words attack the special assessment tax. The prayer sets forth only the money demand and the demand for declaratory relief. However, the trial court treated the action at the trial of the exceptions as including an attack on the assessment and the parties agreed that such was the case. See Tr. 116. In appellants’ brief in the statement of the case the following statement is made:
“They [plaintiff-appellants] filed suit attacking a special assessment tax imposed on the lots in Belle Terre Subdivision by Sewerage District Number One to pay for a sewerage system in the subdivision. Appel *1251 lants further have claimed that they are owed reimbursement from the defendants as a result of the non-use by defendants of monies assessed in the sewerage program in question for extensions to the main collection lines servicing Belle Terre Subdivision. Finally, appellants claimed that they are entitled to a judicial determination of their ownership rights and interests regarding the treatment plant installed in Belle Terre Subdivision.”

“1 Accord, see Fourmy v. Town of Franklin, 126 La. 151, 52 So. 249 (1910) quoting from Kelly v. Chadwick, 104 La. 719, 29 So. 295 (1901) as follows:
‘With the wisdom or unwisdom of special assessments, when ordered in cases in which they are admissible, the courts have no concern, unless there is plainly and manifestly such an abuse of power as takes the case beyond the just limits of legislative discretion.’ ”